**CORPORATION AUDIT CO. et al. v. CAFRITZ.**

No. 9156.

United States Court of Appeals
District of Columbia.

Argued May 23, 1946.

Decided June 28, 1946.

Mr. Neil Burkinshaw, of Washington, D. C., with whom Mr. Dennis Collins, of Washington, D. C., was on the brief, for appellants.

Mr. Milton Strasburger, of Washington, D. C., with whom Mr. Jacob Sandler, of Washington, D. C., was on the brief, for appellee.

Before GRONER, Chief Justice, and CLARK and PRETTYMAN, Associate Justices.

PRETTYMAN, Associate Justice.

Appellee Cafritz was plaintiff in a civil action. He is engaged in several business enterprises in the District of Columbia, in which enterprises he is sole or majority stockholder in a number of corporations. Prior to and during 1941, he employed the Corporation Audit Company as the accountant and auditor for himself and some of his corporations. The general manager, and apparently the sole operator of this Audit Company, was one Barney Robins. Robins had possession of the Cafritz books of account, including the checkbooks. The banks sent the monthly statements, together with the cancelled checks, to the Audit Company. Robins had no authority to sign checks drawn upon the accounts.

In early 1941 Cafritz prepared to leave Washington for an extended vacation. At the trial in the present case, he testified that he signed and left with Robins five checks drawn on a Cafritz bank account and payable to corporations which were among the Cafritz enterprises. His purpose was to make available to the corporations funds necessary for their operations during his absence. These checks totaled $36,134.75.

The checks were paid by the bank, four of them in February, 1941, and the fifth in October, 1941.

Some two years later, agents of the Bureau of Internal Revenue called on Cafritz for information about an item in his 1941 return, represented by one of the five checks. Cafritz called for information from Robins, who shortly thereafter left the city and later, in November, 1943, died. The record contains no explanation of the transactions by Robins, and Cafritz testified that he made none.

Examination of the books of the Cafritz corporations by other accountants failed to reveal any entries indicating the receipt of any of the amounts represented by the five checks. The cancelled checks were sent by the bank to Robins, and the only record in respect to them kept by the bank was the ledger sheet showing payment of five checks in the several amounts of the five checks involved. Witnesses for Robins' estate testified that no monthly bank statements of the Cafritz accounts and no cancelled checks on those accounts were found by them among Robins' papers.

Cafritz brought civil action for $36,134.75 against the Corporation Audit Company, Mrs. Rose Robins as the Administratrix of the Estate of Barney Robins and also in her individual capacity as sole possessor of the assets of the liquidated Audit Company, and for $8,400 against the Corporation Finance Company. The District Court, the judge sitting without a jury, entered judgment for Cafritz. The defendants below appealed.

The trial court, over objection, permitted Cafritz to testify against Robins' estate as to his transactions with Robins. The court held that Robins and the Audit Company occupied a fiduciary relationship to Cafritz; that having possession of duly-executed checks drawn upon the Cafritz account, and those checks having been paid by the bank, they were under obligation to account to Cafritz either for the checks or for the receipts therefrom; and that having failed so to account to Cafritz, they were liable.

The first questions presented by the appeal are: (1) Was Cafritz's testimony as to his transactions with Robins admissible as against Robins' estate? (2) Was the relationship of Robins and the Audit Company to Cafritz of a fiduciary nature such as to require that, having been in possession of the checks, they were liable for the amount thereof upon failure to account for them? (3) Was the evidence sufficient to

support judgment for Cafritz? Further points in the case, somewhat aside from the main issues, relate to the Corporation Finance Company, and to Rose Robins individually; we shall discuss those items separately.

Obviously, Cafritz's whole claim rests upon his own testimony that he executed the five checks and left them with Robins. Counsel for the defendants objected to such testimony each time it was offered, as being inadmissible against Robins' estate. The ground of the objection is the surviving-witness rule embodied in the District Code.[1] The evidence was admitted under the exception contained in Section 14—304 of the Code. It was conceded by appellee and held by the court that the evidence would be inadmissible but for the exception. Section 14—304 reads: "Where any of the original parties to a contract or transaction which is the subject of investigation are partners or other joint contractors, or jointly entitled or liable, and some of them have died or otherwise become incapable of testifying, any others with whom the contract or transaction was personally made or had, or in whose presence or with whose privity it was made or had, or admissions in relation to the same were made, shall not, nor shall the adverse party, be incompetent to testify because some of the parties or joint contractors, or those jointly entitled or liable, have died or otherwise become incapable of testifying."

The District Court held that Robins and the Audit Company were jointly-liable parties to the transaction and that the survivorship of the corporation brought Cafritz's testimony within the terms of the exception. We think that this was error.

It is settled[2] that the statutory surviving-witness rule[3] in the District of Columbia does not apply where transactions are between an individual and a corporation. The reasons are that a corporation itself is incapable of testifying and an agent of the corporation is not a "party" to the transaction. Since the descriptive language of the exception to the rule (Sec. 14—304) is the same as that of the rule itself, it necessarily follows that neither a corporation nor its agent can be a surviving "party" to a transaction, within the meaning of the exception. In the case at bar, therefore, the surviving-witness rule does not exclude Cafritz's testimony against the Audit Company on account of Robins' death; neither does the exception permit his testimony against Robins' estate by reason of the survivorship of the corporation. For the purposes of neither the rule nor the exception was the corporation a "party" which could "become incapable" of testifying.

We are not here concerned with the wisdom or inherent justice of the surviving-witness rule. It has been vigorously attacked by eminent authorities.[4] It is, however, as we have said, incorporated in the District of Columbia Code, and the sole function of the court is to apply it as it there appears.

Since the claim against Robins' estate rests upon Cafritz's testimony as to his transaction with Robins, the judgment as against the estate must be reversed.

The judgment against the Audit Company rested upon its duty to account for the checks left in the possession of its agent, Robins. We agree with the view of

---

[1] D.C.Code (1940) § 14—302.

[2] Cush v. Allen, 1926, 56 App.D.C. 327, 13 F.2d 299, 54 A.L.R. 261.

[3] "If one of the original parties to a transaction or contract has, since the date thereof, died or become insane or otherwise incapable of testifying in relation thereto, the other party thereto shall not be allowed to testify as to any transaction with or declaration or admission of the said deceased or otherwise incapable party in any action between said other party or any person claiming under him and the executors, administrators, trustees, heirs, devisees, assignees, committee, or other person legally representing the deceased or otherwise incapable party unless he be first called upon to testify in relation to said transaction or declaration or admission by the other party, or the opposite party first testify in relation to the same, or unless the transaction or contract was made or had with an agent of the said deceased or otherwise incapable party, and said agent testifies in relation thereto." D.C.Code (1940) § 14—302.

[4] E. g., 2 Wigmore, Evidence (3d Ed. 1940) §§ 578, 578a.

the District Court. Modern business has become so complicated, and its affairs so dependent upon proper accounting, that business men and government authorities must necessarily rely upon the character and skill of the accountants and auditors who record transactions and draw the conclusions in figures from the recordings. The evidence in the present case depicts a greater trust than that imposed upon one who only keeps accounts or audits them. The Audit Company kept physical possession of the books in its own office, in a building away from the Cafritz offices. It received and kept the monthly bank statements. By its agent, Robins, it received checks duly signed and valid, for the purpose of applying them to the interests of the principal. By all these acts it assumed a position of trust and confidence which imposed upon it a high degree of responsibility. So far as the record shows, the money represented by the checks has disappeared, the checks themselves have disappeared, and no entry or notation is to be found indicating the whereabouts of either the money or the checks. We think that the District Court rightly concluded that the combined circumstances made it necessary that the Audit Company either account or be liable.

■ We think that the evidence was sufficient to support the judgment against the Audit Company. There is, to be sure, an air of mystery about the bank account upon which the five checks are said to have been drawn. As of October, 1938, the account had a balance of $2,005.73. No entries were made in it until January, 1941. Then $42,734.75 went in and out, and by February 20, 1941, the balance was again $2,005.73. Of these withdrawals, $15,000 was drawn by Cafritz and the remainder represented four of the five checks here in dispute. Then appears an undated entry of a deposit of $8,400 and, in October, 1941, a deposit of $21,840.50. In that same month, two withdrawals were recorded, in the identical amounts of the two deposits, and the balance returned to $2,005.73. That amount was withdrawn in December, 1941. No evidence appeared that Robins or the Audit Company got the sums represented by the five checks. But the sufficiency of the evidence must be judged by the duty resting upon the corporation by reason of its relationship to Cafritz. It had the checks, the money was withdrawn from the bank and disappeared. It failed to account or explain. That failure carried liability.

■ The judgment for $2,889 against Mrs. Rose Robins individually rests upon the fact that before the death of Robins the furniture, trade name, and customers of the Audit Company were sold, and that after his death but before her appointment as administratrix, she, individually as a stockholder in the corporation, received that amount in cash from the sales price. Her liability was that of a transferee of assets of the corporation for a liability of the corporation, the latter being then insolvent. The District Court was correct in its view of that matter.

■ The judgment against the Corporation Finance Company rests upon considerations apart from those controlling the other judgments. This corporation was owned, principally if not wholly, by Robins. Cafritz had no dealings with it whatever. The evidence upon which the claim against it rested was that on October 25, 1941, Robins deposited to its account the sum of $8,400, represented by a check upon a local bank; that two days later a withdrawal for $8,400 appeared as an entry against the Cafritz account which we have described; that one day after that, Robins, by a check drawn to himself personally, withdrew the $8,400 from the Finance Company account; and that one of the five checks said to have been left by Cafritz in the possession of Robins in February, 1941, was for $8,400. No entry relating to the item appeared in the Finance Company records, and no explanation of the source or the disposition of the money was available upon the trial. Thus, the judgment against the Finance Company rested entirely upon the coincidence of amounts. We do not think that that was sufficient. This corporation owed Cafritz no such duty as did the Audit Company. The trial court felt that in the absence of a record of the Finance Company relating to either the receipt or the dis-

bursement of the sum, it was reasonable to infer that the check deposited by Robins to the Finance Company account in October was the one which Cafritz had given him in February. The coincidence is undoubtedly odd and perhaps even suspicious. But we do not think that, standing wholly alone, it is sufficient, as a matter of law, to impose liability upon the corporation.

In so far as the judgment was against the Audit Company and Rose Robins, it is affirmed. In so far as it was against Rose Robins as Administratrix of the Estate of Barney Robins and the Finance Company, it is reversed. The costs will be divided.

Affirmed in part and reversed in part.