UNITED STATES of America,
Plaintiff-Appellant,

v.

Samuel NEIDORF and Maria Glickman,
Executrix of the Estate of Mannes N.
Glickman, Defendants-Appellees.

No. 73–2993.

United States Court of Appeals,
Ninth Circuit.

Aug. 4, 1975.

Certiorari Denied Jan. 26, 1976.

See 96 S.Ct. 878.

Ronald R. Glancz (argued), U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Leo Altshuler (argued), Beverly Hills, Cal., Henry J. Shames (argued), Los Angeles, Cal., for defendants-appellees.

## OPINION

Before CHAMBERS, MERRILL and WALLACE, Circuit Judges.

WALLACE, Circuit Judge:

This case concerns the construction of the statute of limitations applicable to damage suits brought by the United States, 28 U.S.C. § 2415. The sole question on appeal is whether the government's complaint states a claim founded upon a tort, which must be sued upon within three years after it accrues, or founded upon "any contract express or implied in law or fact," which must be sued upon within six years. *Id.* §§ 2415(a), (b). The district court held that the government's claim, which was brought more than three years but less than six years after it accrued,[1] was founded upon tort and thus barred by section 2415. The court granted summary judgment in favor of Neidorf and the estate of Glickman and the United States appeals. We reverse.

In its complaint, the government alleged that while renegotiation claims for excessive profits were pending against Hermetic Seal Products Co. (Hermetic Seal), Neidorf, Glickman and Klebanoff,[2] as officers and directors of the corporation, caused it to distribute to themselves as shareholders $2,025,000 in dividends through a dummy corporation, Western Hemisphere Industries, Inc. In addition, through an intricate series of corporate maneuvers in which the capital stock of several affiliated corporations was transferred to Hermetic Seal, Neidorf, Glickman and Klebanoff allegedly caused themselves to receive $544,000 in cash directly from Hermetic Seal and $366,000 in cash indirectly through the dummy corporation, all with intent to prevent the government from collecting any of its renegotiation claims. The distribu-tion of dividends and the capital stock transactions allegedly rendered Hermetic Seal insolvent and without sufficient assets to satisfy the government's claims.

In 1961, after the renegotiation proceedings had concluded, the government recovered judgments against Hermetic Seal totaling $975,000. Except for $1,500 in life insurance proceeds, execution on the judgments was returned unsatisfied in 1964, and the corporation has since gone out of business.

Appellees contend that the present suit is founded upon a tort and thus barred by section 2415(b): "[E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues . . . ." It may be that the facts alleged in the government's complaint state a cause of action in tort against Neidorf and Glickman as officers and directors of Hermetic Seal. *But see* 1 G. Glenn, Fraudulent Conveyances and Preferences § 74, at 123 (rev. ed. 1940). Nonetheless, the government also states two claims against appellees as distributees of the corporate assets, neither of which is an action in tort.

First, the government alleges that Hermetic Seal had been rendered insolvent by direct and indirect distributions to Neidorf, Glickman and Klebanoff through the capital stock transactions. These allegations state a cause of action to recover fraudulent conveyances, *see United States v. Schofield,* 152 F.Supp. 529, 531 (E.D.Pa.1957), an action

---

1. Before 28 U.S.C. § 2415 became effective in July, 1966, no statute of limitations restricted damage suits by the United States. *United States v. Thompson,* 98 U.S. 486, 25 L.Ed. 194 (1878). Although the events alleged in the government's complaint occurred prior to 1966, subsection (g) of the statute provides: "[A]ny right of action subject to the provisions of this section which accrued prior to the date of enactment of the Act shall, for purposes of this section, be deemed to have accrued on the date of enactment of this Act." 28 U.S.C. § 2415(g). This suit was filed in February, 1972.

2. The United States brought a separate suit against Klebanoff in the United States District Court for the District of New Jersey (Trenton), *United States v. Klebanoff,* Civil Action No. 216–72. The government's appeal from summary judgment in favor of Klebanoff is now pending before the Third Circuit.

not founded upon a tort for purposes of section 2415. *United States v. Franklin Nat'l Bank,* 376 F.Supp. 378 (E.D.N.Y. 1973). "Surely the action is not one for actual fraud where a complete cause of action may be stated by a showing of the bare facts of a voluntary conveyance resulting in insolvency." *Hearn 45 St. Corp. v. Jano,* 283 N.Y. 139, 143, 27 N.E.2d 814, 816 (1940). The alleged lack of good faith on the part of Neidorf and Glickman is relevant to lack of fair consideration. *See* Uniform Fraudulent Conveyance Act § 3. Moreover, even where proof of intent to hinder creditors' rights is necessary to set aside a fraudulent conveyance, Uniform Fraudulent Conveyance Act § 7, this requirement neither transforms the action into one in fraud nor makes it "founded upon a tort" for purposes of 28 U.S.C. § 2415. *United States v. Franklin Nat'l Bank, supra,* 376 F.Supp. at 382–84.

> The fraud, such as it is, is only incidental to the right of the creditor to follow the assets of the debtor and obtain satisfaction of the debt. The gravamen of the cause of action . . is the ordinary right of a creditor to receive payment . . . .

*Hearn 45 St. Corp. v. Jano, supra,* 283 N.Y. at 143, 27 N.E.2d at 816.

▪ Second, the complaint also states a cause of action against Neidorf and Glickman as shareholders for recovery of distributions that rendered the corporation insolvent. A creditor may sue for restitution of such payments, at least to the extent of the amount owed, without regard to any wrongdoing on the part of directors, officers or shareholders. *Landers Frary & Clark v. Vischer Prod. Co.,* 201 F.2d 319, 324 (7th Cir. 1953) (alternate holding); *Corporation Audit Co. v. Cafritz,* 81 U.S.App.

D.C. 196, 156 F.2d 839, 842 (1946); *Wood v. National City Bank,* 24 F.2d 661, 663 (2d Cir. 1928); *see* N. Lattin, Corporations § 154 (2d ed. 1971); R. Stevens, Corporations § 102, at 462 (2d ed. 1949). This liability, closely related to one for recovery of a fraudulent conveyance, is likewise not founded upon a tort.

Both the liability of the transferee of a fraudulent conveyance and the liability of a shareholder to a creditor of the corporation are based not upon tort but upon quasi-contract. 1 G. Glenn, *supra,* at §§ 56, 74, 239; H. Ballantine, Corporations § 255, at 600 (rev. ed. 1946); N. Lattin, *supra,* § 154, at 568.[3] *See Brown v. O'Keefe,* 300 U.S. 598, 606–07, 57 S.Ct. 543, 81 L.Ed. 827 (1937); *Platt v. Wilmot,* 193 U.S. 602, 612–13, 24 S.Ct. 542, 48 L.Ed. 809 (1904). True, unlike contract, the government claims against Neidorf and Glickman are not based upon any consensual relationship; but that is not required for quasi-contractual liability. "A quasi contractual obligation is created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent." 1 A. Corbin, Contracts § 19 (1963). Unlike the remedy in tort of compensatory damages, the remedy sought here is restitution of benefits received. *See* Corbin, *Quasi-Contractual Obligations,* 21 Yale L.J. 533, 550 (1912). Also, unlike tort, the liabilities here arise independently of any fraudulent conduct by either the transferee or the transferor. *United States v. Franklin Nat'l Bank, supra,* 376 F.Supp. at 381–82. They are imposed by law, predicated on the fact of the insolvency and justified on grounds of fairness.

▪ The United States has six years to sue upon quasi-contractual claims. Section 2415(a) provides:

---

3. The right of the creditor to follow an "illegal" dividend into the hands of an innocent shareholder if recognized, should not be placed upon the trust fund doctrine, the theory that the assets of a corporation constitute a trust fund for the protection of creditors, or upon the theory of a fraudulent conveyance, but upon the theory of enforcing the superior equity or priority of a creditor to be paid out of capital. The liability, in the absence of statute, is of a quasi-contractual nature and should depend upon superior equities of the creditors.

H. Ballantine, Corporations § 255, at 600 (rev. ed. 1946).

[E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues

. . . .

"Contract implied in law" is a synonym for "quasi-contract." 1 A. Corbin, Contracts § 19 (1963). More importantly, the legislative history of 28 U.S.C. § 2415 specifies that quasi-contractual actions were to be subject to a six-year limitation. *Hearings on H.R. 13652 Before Subcomm. No. 2 of the Comm. on the Judiciary,* 89th Cong., 2d Sess., 7, 10 (1966); H.R.Rep. No. 1534, 89th Cong., 2d Sess., 4, 11 (1966); S.Rep. No. 1328, 89th Cong., 2d Sess., 2, 12 (1966), reprinted in 2 U.S.Code Cong. and Admin.News. 89th Cong., 2d Sess., p. 2502 (1966); 112 Cong.Rec. 6876 (1966) (remarks of Senator Ervin).[4]

Grouping quasi-contractual actions with those based upon consensual obligations is historically sound. The principal forms of action known at common law were tort and contract. Yet there was an entire category of actions sounding in neither contract nor tort that developed to compete with the remedies available in the chancery courts. Because the obligations underlying these actions generally resembled contract more than tort, they were enforced by the action of assumpsit.[5] *See* W. Keener, Quasi-Contracts 15 (1893). Because all rights enforced by assumpsit were regarded as "based on contract," 1 S. Williston, Contracts § 3, at 9–10 (W. Jaeger ed. 1957), in the absence of a specific statute the appropriate statute of limitations was that for actions *ex contractu.* Restatement of Restitution § 5 (1937); *see* 12 W. Fletcher, Cyclopedia of Corporations § 5430 (perm. rev. ed. M. Wolf 1971). In 28 U.S.C. § 2415, Congress assigned limitations according to the common law division of actions. Thus, whenever the United States sues for damages, the substance of the claims must be characterized for purposes of section 2415 as sounding in either tort, contract or quasi-contract.[6] Because the present suit sounds

---

**4.** For example, the report of the House Judiciary Committee states:

> Subsection (a) of new section 2415 added by the bill provides for a 6-year limitation which would apply to all Government actions based on contracts whether express or implied in law or in fact. This provision would extend to obligations which are based on quasi-contracts.

H.R.Rep. No. 1534, 89th Cong., 2d Sess., 4 (1966).

**5.** For instance, a judgment debtor is under a legal obligation to satisfy the judgment against him, but not because he has agreed to assume this obligation. Yet the common law permitted actions *ex contractu* on judgments, the judgment debtor's obligation being termed "quasi-contractual." Corbin, *Quasi-Contractual Obligations,* 21 Yale L.J. 534, 536–37 (1912). Another quasi-contractual obligation at common law was that imposed by statute or custom. For example, an action lay in assumpsit where a statute provided that anyone might break a log jam and recover his expenses from the owners of the logs. *Woods v. Ayres,* 39 Mich. 345, 347–55 (1878) (dictum). Often benefits bestowed voluntarily upon another without request make the latter liable in quasi-contract. Thus one who found a boat adrift received his expenses in moving, repairing and caring for the boat from the owner who eventually claimed it. *Chase v. Corcoran,* 106 Mass. 286, 288 (1871). The central theme in these examples is unjust enrichment. *See* Restatement of Restitution, Introductory Note, at 4–9, § 1 (1937).

**6.** We do not decide whether the government's claims in the present action are governed by federal common law or, because no inconsistent federal policies are involved, by reference to state substantive law. *See* 1A-Pt.2 J. Moore, Federal Practice ¶ 0.321 (2d ed. 1974). In the various states, actions to set aside fraudulent conveyances or to recover from shareholders are of both common law and statutory origin and are often enforced in equity as well as at law. Although the government has not invoked any particular state's law in either its complaint or argument, we note that most states have statutes patterned upon the Uniform Fraudulent Conveyance Act, including both New Jersey (where the improper distribution allegedly took place) and California (where the action was brought). Cal. Civ.Code § 3439 et seq.; N.J.Stat.Ann.

in quasi-contract, the government's claim was not barred by section 2415.

Appellees argue that 28 U.S.C. § 2415(b) applies to all cases "founded upon a tort," and that this means the substance of the claim rather than the remedy dictates the applicable limitation. They admit that at common law one could waive a tort claim for damages and sue for restitution in quasi-contract, but they argue that the United States should not be able to increase the limitation from three to six years by characterizing the suit as one for restitution rather than damages. *See* Corbin, *Waiver of Tort and Suit in Assumpsit,* 19 Yale L.J. 221, 234–38 (1910).

We agree that the substance of a claim and not its trappings should be the basis for applying the statute of limitations. However, we need not decide whether the government may waive the tort and sue in quasi-contract, because the government's claim is not founded upon any tort which could have been waived. We hold only that the alleged obligations of Neidorf and Glickman as transferees of fraudulent conveyances and distributees of improper dividends are essentially quasi-contractual liabilities to which the six-year limitation of section 2415(a) applies.

Reversed and remanded.

CHAMBERS, Circuit Judge (concurring and dissenting).

I agree with the majority that insofar as the complaint states a cause of action against Neidorf and Glickman as share-

holders, the action is founded upon quasi-contract and the six-year limitations period applies. I cannot agree that the same holds true for the cause of action to set aside fraudulent conveyances.

The concept of a fraudulent conveyance arose in England from a hybrid statute [1] designed both to raise revenue and to punish offenders who sought to avoid the forfeiture of property to the Crown flowing from a conviction of treason or felony. 1 G. Glenn, Fraudulent Conveyances and Preferences §§ 61a and b, at 86–92 (rev. ed. 1940). After the concept became transformed into a device for the use of private creditors, the creditor was required, at a minimum, to have reduced his underlying claim to judgment before proceeding to attack the fraudulent conveyance either by way of execution or by a creditor's bill in equity. See *Richardson v. Michel,* 45 Cal.App.2d 188, 195–201, 113 P.2d 916 (4th Dis. 1941); 1 G. Glenn, supra, § 85, at 144. One result of this split between proceedings at Law and in equity was that courts tended to look to the procedural posture of the cases before them in order to determine the appropriate statute of limitations. Thus in *Hearn 45 St. Corp. v. Jano,* 283 N.Y. 139, 27 N.E.2d 814 (1940), the court held that the action was one for rescission of spurious judgments, an equitable action governed by a general residuary statute of limitations. Cf., *Silverman v. Christian,* 123 N.J.Eq. 506, 198 A.2d 832 (1938) (the equitable action cannot be brought after the legal action is barred).[2] Not surprisingly, the underlying nature of a fraudulent con-

---

§ 25:2–7 et seq. Further, New Jersey has a specific statute making fraudulent conveyances of a corporation recoverable by a creditor of the corporation. N.J.Stat.Ann. § 14A:14–10. However, even if such suits are governed by state law when brought by the United States, the limitation must be determined by reference to section 2415. *United States v. Gera,* 409 F.2d 117 (3rd Cir. 1969). The characterization of the claim as one in tort, contract or quasi-contract must also be a matter of federal law since the uniform limitations established by the statute would be compromised if limita-

tions varied according to the labels attached to identical causes of action by different states. *Cf. United States v. Nardello,* 393 U.S. 286, 293–95, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969).

1. The Statute of Fraudulent Conveyances, 13 Eliz., c. 7 (1571).

2. The chancellor in *Silverman* found it unnecessary to explain the nature of the action at law. He applied a general statute of limitations applicable to actions in contract, quasi-contract, and most torts.

veyance received relatively little attention.[3]

We are now faced with a federal statute which, although adequate for most purposes, calls upon us to say that a remedy developed to aid a judgment creditor in obtaining execution is "founded" upon either an express or implied contract or a tort, when in fact it is more likely to be neither. In making its choice, the majority has not addressed itself to the policy which first prompted Congress to enact a statute limiting actions begun by the government, that is, that in the field of essentially private litigation, the government should stand on an equal footing with private litigants.[4] In light of this policy, the court should be mindful that the trend among the states has been to regard fraudulent conveyances as, if not actual fraud, something very much like it, and to apply the usually shorter fraud statute of limitations. Anno., 138 A.L.R. 1289 (1940); and see United States v. Franklin Nat'l Bank, 376 F.Supp. 378, 383 (E.D.N.Y.1973). To place a construction upon § 2415 consistent with the prevailing practice would do no violence to the language of the statute, and would achieve a closer approximation of the Congressional intent. It might also inspire the government to move a little faster in the future than it did in this case.

3. When the question has been considered, the issue not infrequently has been clouded by the creditor's reliance upon actual fraudulent intent rather than upon proof of insolvency and inadequate consideration. Hager v. Shindler, 29 Cal. 47 (1865); see Presbyterian Church of Santa Barbara v. Rabbitt, 118 F.2d 732 (9th Cir. 1941).

Under the Uniform Fraudulent Conveyance Act, a prior judgment is no longer necessary, and a creditor may seek both to establish his claim and to set aside a fraudulent conveyance in one action. But for limitations purposes, the distinction between these two objectives remains. 1 G. Glenn, supra § 88, at 148–50.

4. Letter from the Attorney General to the Vice President, H.R.Rep. No. 1534, 89th Cong., 2d Sess. (1966); 2 U.S.Code Cong. and Admin. News, 89th Cong., 2d Sess., at 2513 (1966); see United States v. Sabine Towing and Transportation Co., 289 F.Supp. 250, 253 (E.D.La. 1968).