**Luz Selenia GONZALEZ, Plaintiff,**

v.

**PROGRESSIVE TOOL & DIE CO., Johnson Liquidating Co., Inc., Vimm Corporation, Arvid S. Johnson, Jr. and Vimm Liquidating Corporation, Defendants.**

**No. 77 C 892.**

United States District Court, E. D. New York.

Aug. 9, 1978.

Katz, Shandell, Katz & Erasmous, New York City (Richard E. Shandell, Emily Diamond, New York City, of counsel), for plaintiff.

Bowditch & Dewey, Worcester, Mass. (Charles Donelan, George B. Sanders, Jr., Worcester, Mass., of counsel), for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff, a New York resident, brought this diversity action on April 27, 1977, alleging injury in the course of her employment on September 19, 1974, while operating a vertical injection molding machine known as the "Mercury VMM I" owned by her employer and manufactured by defendant Progressive Tool & Die Co. ("Progressive"), a corporation formerly existing under the laws of Massachusetts.

The complaint's first claim alleges that Progressive negligently designed, manufac-

tured, assembled and tested the machine and negligently failed to provide warnings of its inherent dangers. The other defendants are alleged to be "liable for [Progressive's] debts" as "transferees" of its assets.

The second claim alleges that Progressive warranted to any potential user of the machine that it was free from defects and safe for use, whereas it was defective and unsafe.

The third claim alleges that defendants are liable under the so-called "Doctrine of Strict Liability".

The fourth claim alleges that when plaintiff's employer purchased the machine all the defendants and their predecessors warranted that it was designed, manufactured, assembled, installed, tested and inspected in a proper and safe manner, that it was free of defects and safe, that it would not break under normal use, and that it was equipped with appropriate safety devices, whereas it was not safe and free of defects.

Defendant Arvid S. Johnson, Jr., ("Johnson") answered, denying the critical allegations and setting forth affirmative defenses of contributory negligence, assumption of risk, and laches.

The attorneys for Johnson then moved on behalf of defendants Johnson, Progressive Johnson Liquidating Co., Inc. ("Johnson Liquidating"), Vimm Corporation ("Vimm I"), and Vimm Liquidating Corp. ("Vimm Liquidating"), under Rule 12(b) (6) of the Federal Rules of Civil Procedure ("FRCP") to dismiss the complaint for failure to state a claim. Matters outside the pleadings were presented, and, in accordance with FRCP 12(c), the motion is considered as one for summary judgment and is disposed of pursuant to FRCP 56.

The following facts have been established beyond dispute, except where otherwise noted.

*Progressive and Johnson Liquidating*

Progressive was organized under Massachusetts law on December 24, 1928. Its name was changed to Johnson Liquidating on May 1, 1967, and most of its assets were sold to Amtel, Inc., a Rhode Island corporation. However, fourteen partially assembled vertical injection molding machines known as "Mercury VMM 2" machines were sold to Vimm I. Johnson Liquidating was dissolved on February 3, 1971 by order of the Supreme Judicial Court of Massachusetts, and its assets were distributed to its shareholders, including Johnson.

■ Massachusetts law governs the question of the capacity of a Massachusetts corporation to be sued in this court. FRCP 17(b). Massachusetts General Laws Ch. 156B § 102 provides that a dissolved corporation will continue to exist for a period of three years following dissolution

"for the purpose of prosecuting and defending suits by or against it and of enabling it gradually to settle and close its affairs, to dispose of and convey its property and to make distribution to its stockholders of any assets remaining after the payment of its debts and obligations[.]"

Unless suit is brought against such a dissolved corporation within three years of dissolution the Massachusetts statute deprives the corporation of capacity to be sued. *Cf. Boston Towboat Co. v. Medford Nat. Bank*, 228 Mass. 484, 117 N.E. 928 (Suffolk 1917). This suit was not filed in time, and the complaint is dismissed as to Progressive and Johnson Liquidating.

*Vimm I and Vimm Liquidating*

Vimm I was organized under Massachusetts law on January 31, 1966, and in 1967 or thereafter purchased the fourteen molding machines from Johnson Liquidating. The parties do not agree as to the nature of the operations of Vimm I subsequent to the purchase. Plaintiff asserts that Vimm I continued the business operations of the vertical injection molding machine department of Progressive, employing three persons formerly employed by Progressive, and having as its directors, officers and shareholders the same individuals who were the directors, officers and shareholders of Progressive. Defendants assert that after purchasing the machines from Progressive,

Vimm I merely contracted out the completion of the assembly of the machines and thereafter sold them to various buyers. In any case in April of 1971 Vimm I sold all of its remaining assets including its name to a Theodore Athanas, who carried on the business in another corporation under the same name, referred to hereafter as Vimm II. Vimm II has only recently been served and is not before the court on the present motion.

Vimm I changed its name to Vimm Liquidating on June 7, 1971. A plan of dissolution was adopted on April 12, 1971, but the corporation was never dissolved and is presently amenable to suit. As there were no assets left after the payment of its debts, there was no distribution to its sole remaining shareholder, Johnson.

Presumably there are no assets in Vimm I and Vimm Liquidating to satisfy any judgment plaintiff may obtain. Nonetheless plaintiff's complaint seeks to hold them as successor corporations to Progressive upon whose dissolution they allegedly succeeded to the tort and warranty liabilities. Although the question of the liability of a "successor corporation" for personal injuries caused by its predecessor's products has been litigated in a number of jurisdictions [*Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal. Rptr. 574, 560 P.2d 3 (1977); *Leannais v. Cincinnati, Inc.*, 565 F.2d 437 (7th Cir. 1977) (applying Wisconsin law); *Turner v. Bituminous Casualty Co.*, 397 Mich. 406, 244 N.W.2d 873 (1976); *Cyr v. B. Offen & Co., Inc.*, 501 F.2d 1145 (1st Cir. 1974) (applying New Hampshire law); see cases collected in "Annotation, Products Liability: Liability of Successor Corporation for Injury or Damage Caused by Product Issued by Predecessor", 66 A.L.R.3d 824], this court has found no Massachusetts or New York decisions precisely in point.

Because plaintiff apparently will urge the same theory of liability against Vimm II, not yet before the court, as is claimed against Vimm I and Vimm Liquidating, the court will not decide whether Vimm I and Vimm Liquidating may be held as successors until the facts are fully developed and the issues briefed by all interested parties.

*Johnson*

Plaintiff argues that Johnson is liable for her injuries because (1) the nature of his relationship with Progressive justifies "piercing the corporate veil" to reach his personal assets; (2) he was a successor to Progressive's business; and (3) he was a stockholder and a distributee of the assets remaining to Progressive after dissolution.

■ There is no basis, under the law of New York or Massachusetts, for "piercing the corporate veil" of Progressive to reach Johnson's personal assets. Where corporate assets are insufficient to pay corporate debts courts have on occasion permitted a creditor to reach the assets of shareholders, despite the generally limited nature of their liability, upon a showing that the shareholders have so dealt with the corporate assets as to work a fraud or an injustice upon creditors. In *Berger v. Columbia Broadcasting System, Inc.*, 453 F.2d 991 (8th Cir. 1972), *cert. denied* 409 U.S. 848, 93 S.Ct. 54, 34 L.Ed.2d 89 (1972), the court reviewed the New York case law defining the scope and the limitations of the doctrine and noted that a creditor must show that the shareholders controlled the corporation so completely that the corporation could not fairly be said to have any separate identity and that the control was used to perpetrate a fraud or an "unjust act in contravention of plaintiff's legal rights[.]" *Id.*, at 995, quoting from *Lowendahl v. Baltimore & O. R. R.*, 247 App.Div. 144, 287 N.Y.S. 62, 76, (1st Dept.) *aff'd* 272 N.Y. 360, 6 N.E.2d 56 (1936). See also *My Bread Baking v. Cumberland Farms, Inc.*, 353 Mass. 614, 233 N.E.2d 748 (Bristol 1968); 1 Fletcher, *Cyclopedia Corporations* § 41 et seq. (1974 ed.).

Plaintiff has presented no evidence to indicate that before dissolution Progressive's assets were insufficient to satisfy creditors' claims. Nor has plaintiff shown that Johnson so controlled the assets of Progressive as to work a fraud upon her or any other creditor. She argues that Progressive paid excessive salaries to Johnson, who was the Vice President and a director,

and to Johnson's father ("Johnson, Sr."), the President and a director. Johnson received $20,000 per year in salary prior to 1966 and $18,000 per year thereafter; Johnson, Sr. received $35,000 per year prior to 1966 and $20,000 per year thereafter. To show that corporate assets have been siphoned off to the detriment of creditors more is necessary than a recitation of the salaries paid to corporate officers. Some showing is required that in light of the corporation's financial status the salaries paid were so excessive as fraudulently to deplete the assets available to creditors.[1] No such evidence has been submitted by plaintiff.

■ Plaintiff has presented no facts to support her theory that Johnson is liable as a successor. He states that he received no assets of Progressive upon the dissolution other than those received by him in his capacity as a shareholder. He did not continue the business. The theory of successor liability, imposing liability on one who carries on the business of a dissolved corporation, does not apply to Johnson.

In her third theory plaintiff invokes the so-called trust fund theory of shareholder liability.

When a corporation ceases doing business there may remain a number of unsatisfied claims against it. The unfairness of permitting a corporation to escape its debts by dissolving and distributing its assets to its shareholders has led many states, including Massachusetts, to enact legislation requiring the corporation to maintain an existence for the limited purpose of defending (and prosecuting) suits. Under such statutes the assets are distributed after all known claims are satisfied.

Where corporations distribute their assets forthwith upon cessation of business in jurisdictions without such legislation, creditors rights have been judicially protected through the adoption of the trust fund theory, and the distributed assets are treated as a trust fund for the benefit of creditors.

In *Pierce v. United States*, 255 U.S. 398, 41 S.Ct. 365, 65 L.Ed. 697 (1921), for example, the government had obtained a conviction against a corporation and sought to enforce the penalty against the stockholders to whom the dissolved corporation's assets had been distributed. The Court held that:

> "[a] corporation cannot by divesting itself of all property leave remediless the holder of a contingent claim, or the obligee of an executory contract, or the holder of a claim in tort; and there is no good reason why the United States with a claim for penalties should be in a worse plight." [Citations omitted]

255 U.S. at 403, 41 S.Ct. at 367. In *Sheresky's Estate*, 157 N.Y.S.2d 829 (Surrogate's Court, New York Co. 1956), the court applied the trust fund theory where a Kentucky corporation was dissolved by its sole shareholder and the proceeds of the sale of the corporate assets placed in his own personal bank account. See also *Drew v. United States*, 367 F.2d 828, 177 Ct.Cl. 458 (1966); *Corporation Audit Co. v. Cafritz*, 81 U.S.App.D.C. 196, 156 F.2d 839 (1946); *Koch v. United States*, 138 F.2d 850 (10th Cir. 1943); *Plastic Contact Lens Co. v. Frontier of Northeast, Inc.,* 324 F.Supp. 213 (W.D.N.Y.1969), *aff'd* 441 F.2d 67 (2d Cir. 1971), *cert. denied*, 404 U.S. 881, 92 S.Ct. 196, 30 L.Ed.2d 162 (1971); 15A Fletcher, *supra*, § 7369 et seq.

Creditors of dissolved corporations have not found the trust fund theory a completely satisfactory solution, for they have been obliged to trace the distributed assets, not always an easy task. For example, in *Sheresky's Estate, supra,* the court held that because the bank account had been depleted the fund was "destroyed" and the creditor was thus without remedy, even though the account was later replenished. 157 N.Y.S.2d at 832.

Because of such uncertainties a corporate creditor in a state like Massachusetts is usually in a better position than a creditor forced to rely upon the trust fund theory.

---

1. Plaintiff also submitted evidence which she says indicates that defendant Johnson received more of Progressive's assets upon dissolution than he has heretofore admitted. This does not bear on the way Progressive's affairs were managed prior to dissolution.

**368**

While he is obliged to bring his claim within the period set by the dissolution statute, he may sue at "law" rather than in "equity" and not be subject to equitable defenses.

In the case at bar plaintiff seeks to apply the trust fund theory as a remedy supplemental to that given by a dissolution statute. Whether she may do so appears not to have been squarely decided by any court. In *Bowen v. Fairfield*, 260 Mass. 38, 157 N.E. 39 (Suffolk 1927), a creditor of a dissolved corporation made a motion to substitute as a defendant a shareholder of the corporation after the expiration of the three year period provided in the dissolution statute. The court held that the motion should have been denied and said that in "the absence of a statutory provision to that effect a stockholder is not liable to pay the debts of a corporation." However, the court's opinion does not disclose whether the plaintiff was seeking to reach corporate assets distributed to the stockholder. Moreover, the opinion also appears to go off on the procedural ground that the court had no power to allow an amendment to state a cause of action not in existence when the action was brought. The opinion therefore cannot be regarded as authority on the question before this court and no other case has been found in point.[2]

Whether the Massachusetts legislature in adopting the dissolution statute intended it to be the exclusive remedy for a creditor of a dissolved corporation is by no means clear.[3] The statute and its predecessors, which do not mention the rights of creditors as against shareholders of the dissolved corporation, are of considerable vintage, having been in existence at least from the beginning of this century. No materials are available disclosing the legislative intent.

To hold that the statute replaced the old existing equitable remedies would have the virtue of predictability. In that view the statute would be a compromise between the interests of creditors and those of the shareholders. The former lost their ability to bring suit long after dissolution, and the latter lost their right to immediate distribution of corporate assets. But each gained a measure of certainty. On the other hand, perhaps the Massachusetts legislature's purpose was to provide an additional remedy, recognizing the limitations of the trust fund theory.

In a products liability case where the injury has occurred long after the corporate dissolution, suit obviously cannot be brought during the statutory three year period. At the time the Massachusetts statute was enacted claims for products liability such as that made in this case were largely unknown. Only recently have the Massachusetts courts held that a claim for personal injuries caused by defective or negligently made products accrues at the time of injury. *Cannon v. Sears, Roebuck & Co.*, 374 N.E.2d 582 (Sup.Jud.Ct.Mass. Essex

---

2. The arguments on each side have, however, been rehearsed recently in two law review articles. Henn & Alexander, *Effect of Corporate Dissolution on Products Liability Claims*, 56 Cornell L.Rev. 865 (1971); Wallach, *Products Liability: A Remedy in Search of a Defendant—The Effect of a Sale of Assets and Subsequent Dissolution on Product Dissatisfaction Claims*, 41 Mo.L.Rev. 321 (1976).

3. This court is required, in a diversity action, to follow the choice of law rules of New York. *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The New York courts follow the so-called governmental interests analysis approach to resolving questions of choice of law. *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). In the present case New York may have an interest in the recovery by its citizens for injuries suffered by them due to products made in other jurisdictions. However, Massachusetts has an interest in sustaining its legislative scheme for corporate dissolution. Furthermore, application of New York law to the question of Johnson's liability for the torts of Progressive might result in the anomalous situation of providing greater redress to citizens of New York against shareholders of dissolved Massachusetts corporations than is available to citizens of Massachusetts. Thus, if the Massachusetts legislature intended by the dissolution statute to immunize shareholders from claims by corporate creditors, this court should apply Massachusetts law and hold Johnson not liable. Cf. *Bayer v. Sarot*, 51 A.D.2d 366, 381 N.Y.S.2d 489 (1st Dept.1976), aff'd, 41 N.Y.2d 1070, 396 N.Y.S.2d 184, 364 N.E.2d 848 (1977).

1978). It is thus highly unlikely that the legislature focussed on a situation such as is presented in this case. This court is reluctant to say what the Massachusetts legislature would have done had it been faced with the issue. No statutory language and no Massachusetts decisions have been cited which give guidance.

Fairness suggests that someone injured by a product made by a corporation since dissolved should not be left without any remedy while the shareholder enjoys the assets of the culpable corporation. Had suit been brought prior to dissolution the assets available for distribution would have been diminished to the extent Progressive became liable. Moreover, dissolving corporations may insure against future products liability claims for the protection of their shareholders. Imposition of liability on the shareholder may encourage such coverage.

On the other hand a holding that plaintiff may pursue the assets distributed to Johnson will mean that shareholders of dissolved corporations will be subject to liabilities they perhaps did not foresee. In addition, arguably an obligation to insure against claims beyond the three year period should be imposed, if at all, only by the legislature and not by courts. But even if plaintiff is entitled on the trust fund theory to make a claim to corporate assets in Johnson's hands, she must show that it is equitable to allow the claim. Where, as is alleged here, another corporation continues the business of the dissolved corporation the question arises whether the successor corporations assumed the liabilities of the dissolved corporation, whether by operation of law or otherwise. If so, then presumably the price paid by the successors was diminished by a sum equal to the unliquidated value of contingent claims such as that at bar.

If the successors are liable, it would not be equitable to hold Johnson on a trust fund theory, for presumably he would not have received a distribution undiminished by the value of the contingent claim. On this record the court cannot determine whether other defendants are liable as successors.

The court therefore declines to decide the difficult question of whether Johnson may be held liable on a trust fund theory under Massachusetts law until a fuller record is made.

The motion is granted to the extent of dismissing the complaint as to Progressive and Johnson Liquidating but is otherwise denied. So ordered.