**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for the Bank of New England**

v.

**Dennis ZIBOLIS, et al.**

**Civ. No. 93–631–JD.**

United States District Court, D. New Hampshire.

May 23, 1994.

---

58

Wilbur A. Glahn, Manchester, NH, for plaintiff.

Robert M. Parodi, Hudson, NH, Michael J. DiCola, Bath, ME, (withdrew as counsel 6/8/94) for defendants.

## ORDER

DiCLERICO, Chief Judge.

The plaintiff, Federal Deposit Insurance Corporation ("FDIC"), as receiver for the New Bank of New England, N.A. ("NBNE"), brought an action against defendants Dennis Zibolis and Marie Zibolis seeking to set aside a transfer of property from the defendants, jointly, to Marie Zibolis, individually. The defendants each filed a motion to dismiss (documents no. 2 and 3) on the grounds that the state statute of limitations has extin-

guished the claims.[1] The court's jurisdiction is based on 12 U.S.C.A. § 1819(b)(2) (West 1989 & Supp.1994) and 28 U.S.C.A. § 1331 (West 1994). For the following reasons, the defendants' motions are denied.

### Background

The facts as alleged by the FDIC are as follows. On November 24, 1987, Dennis Zibolis as a general partner of Barretts Hill Partnership ("BHP"), entered into a revolving construction loan with the Bank of New England ("BNE") evidenced by a revolving construction note which he and the other partners of BHP personally guaranteed. Complaint, ¶¶ 7, 8, 10, 12. In addition to the note and guarantee, Zibolis also executed a construction mortgage and a security agreement granting BNE a mortgage on all BHP property. *Id.* at ¶ 12.

Throughout 1988 BHP encountered financial difficulties. *Id.* at ¶ 15. On December 7, 1988, the defendants transferred joint ownership in their home at 17 Naticook Avenue, Merrimack, New Hampshire, to Marie Zibolis, individually, for nominal consideration. *Id.* at ¶ 18. In 1990, BHP ceased making loan payments and defaulted on its obligations to BNE. *Id.* at ¶¶ 22, 23.

On January 6, 1991, BNE was closed by the Office of the Comptroller of the Currency of the United States. *Id.* at ¶ 1. The FDIC was appointed receiver and BNE's assets were purchased by NBNE. *Id.* In July 1991, the FDIC was appointed receiver for NBNE and became holder of the mortgage, note and guarantee. *Id.* at ¶ 2. On June 21, 1993, the Hillsborough County Superior Court entered a judgment in favor of the FDIC as receiver of NBNE against Dennis Zibolis in the amount of $1,402,984.45. *Id.* at ¶ 24. On December 2, 1993, the FDIC brought this fraudulent transfer action under New Hampshire's Uniform Fraudulent Transfer Act ("UFTA"), N.H.Rev.Stat.Ann. ("RSA") § 545–A:1, *et seq.*

### Discussion

The defendants contend the action must be dismissed because the FDIC's claims for relief are barred under the state statute of limitations codified as part of UFTA. The FDIC responds that a federal statute of limitations is imposed whenever the FDIC is a party to an action.

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Accordingly, the court must take the factual averments contained in the complaint as true, "indulging every reasonable inference helpful to the plaintiff's cause." *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank,* 958 F.2d 15, 17 (1st Cir.1992); *see also Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir. 1989). The court may grant the motion " 'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.' " *Garita,* 958 F.2d at 17 (quoting *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990)).

In general, the rights of the FDIC are controlled by federal law. *D'Oench, Duhme & Co., Inc. v. FDIC,* 315 U.S. 447, 456, 62 S.Ct. 676, 679, 86 L.Ed. 956 (1942). Section 212(a) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183 (1989), provides the statute of limitations for actions brought by the FDIC in its capacity as receiver. 12 U.S.C.A. § 1821(d)(14) (West 1989 & Supp.1994). Pursuant to § 1821(d)(14)(A), the limitations period for contract claims is the longer of the six-year period beginning on the date the claim accrues or the period applicable under state law. *Id.* The limitations period for tort claims is the longer of three-year period beginning on the date the claim accrues or the period applicable under state law. *Id.* A claim accrues either on the date of the appointment of the FDIC as receiver or the

---

1. While the defendants each filed separate motions to dismiss, except for the exchange of names, the motions are identical.

**60**

date on which the cause of action accrues under state law, whichever is later.[2] *Id.*

■ The federal statute of limitations applies unless the claims expired under state law prior to their assignment to the FDIC. *FDIC v. McSweeney,* 976 F.2d 532, 534 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993); *FDIC v. Cardona,* 723 F.2d 132, 143 (1st Cir.1983). The court therefore begins by determining whether the claims brought by the FDIC were time-barred under New Hampshire law as of the date the FDIC was appointed receiver. *FDIC v. Dawson,* 4 F.3d 1303, 1307 (5th Cir.1993).

■ UFTA provides a four-year limitations period for actions based on the fraudulent transfer of property. RSA § 545–A:9.[3] The transfer of the Zibolis home occurred on December 8, 1988, thus, under state law, the claims were viable until December 7, 1992. The FDIC was appointed as receiver for BNE on January 6, 1991, and appointed as receiver for NBNE on July 13, 1991, prior to the expiration of the state statute of limitations. Accordingly, the statute of limitations began to run when the FDIC was appointed as receiver. 12 U.S.C. § 1821(d)(14)(B); *Dawson,* 4 F.3d at 1307.

■ Assuming the earlier appointment date of January 6, 1991, applies, pursuant to

2. 12 U.S.C. § 1821(d)(14) states:

**(A) In general**
Notwithstanding any provision of any contract, applicable statute of limitations with regard to any action brought by the [FDIC] as conservator or receiver shall be—
(i) in the case of any contract claim, the longer of—
(I) the 6–year period beginning on the date the claim accrues; or
(II) the period applicable under State law; and
(ii) in the case of any tort claim, the longer of—
(I) the 3–year period beginning on the date the claim accrues; or
(II) the period applicable under State law.
**(B) Determination of the date on which a claim accrues**
For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of—
(i) the date of the appointment of the [FDIC] as conservator or receiver; or

§ 1821(d)(14) the FDIC has until January 6, 1997, to bring any contract claims and until January 6, 1994, to bring any tort claims against the defendants.[4] The action was filed on December 2, 1993. Measured from either the six-year period for contract claims or the three-year period for tort claims, the action was timely filed.

The defendants contend, however, that the statute of limitations set forth in § 1821(d)(14)(A) is inapplicable because UFTA claims are neither contract nor tort claims. Defendants' Reply Memorandum at 3. The defendants argue that had Congress intended § 1821(d)(14) to apply to fraudulent transfer actions it would not have provided "a separate and different statute of limitations for FDIC fraudulent transfer claims." *Id.* at 4. The defendants cite to 12 U.S.C. § 1821(d)(17), which provides in pertinent part:

[The FDIC] as [conservator or receiver] may avoid a transfer of any interest of an institution-affiliated party, or any person who the [FDIC] determines is a debtor of the institution, in property, or any obligation incurred by such party or person, that was made within five years of the date on which the [FDIC] was appointed conservator or receiver if such party or person voluntarily or involuntarily made such transfer or incurred such liability with the

(ii) the date on which the cause of action accrues.

3. RSA § 545–A:9 provides:
A claim for relief with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:
I. Under RSA 545–A:4, I(a), within 4 years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;
II. Under RSA 545–A:4, I(b) or RSA 545–A:5, I, within 4 years after the transfer was made or the obligation was incurred; or
III. Under RSA 545–A:5, II, within one year after the transfer was made or the obligation was incurred.

4. For purposes of this motion only, the FDIC concedes that the earlier appointment date of January 6, 1991, applies but maintains that the date of its appointment as receiver for NBNE on July 13, 1991, establishes the date of accrual. Memorandum in Support of Objection to Motion to Dismiss at 3 n. 4.

intent to hinder, delay, or defraud the insured depository institution, the [FDIC], or any other appropriate Federal banking agency.

■ The defendants' argument is without merit. The fact that a fraudulent transfer claim cannot easily be defined as a contract or a tort claim does not make the federal statute of limitations inapplicable. By its plain language, the statute of limitations contained in § 1821(d)(14) applies "to *any* action brought by the FDIC as receiver." 12 U.S.C. § 1821(d)(14)(A) (emphasis added). Thus, for statute of limitations purposes, a fraudulent transfer claim is necessarily considered to sound either in contract or in tort.[5]

■ The existence of § 1821(d)(17) does not alter the application of § 1821(d)(14) to this action. Section 1821(d)(17) is not a statute of limitations but rather a statute vesting the FDIC with power to void transfers made within five years of its appointment as receiver. *See* Memorandum in Response to Defendants' Reply at 3 (citing 12 U.S.C. § 1821(d)(17)). The section is silent as to when actions to void those transfers may be brought and therefore has no relevance to the defendants' motion. *Id.*

*Conclusion*

The defendants' motions to dismiss (documents no. 2 and 3) are denied. The defendants' request for alternative relief are denied without prejudice pursuant to N.H.Dist. Ct.R. 11, which requires that every motion for relief be submitted separately from other pleadings.

SO ORDERED.

---

5. When required, courts have repeatedly demonstrated their ability to characterize fraudulent transfer claims falling under general statutes of limitations that include no catch-all provision. *See, e.g., United States v. Neidorf,* 522 F.2d 916, 918 (9th Cir.1975) (holding fraudulent conveyance claim in action under consideration based on quasi-contract), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976); *Desmond v. Moffie,* 375 F.2d 742, 743 (1st Cir.1967) (applying district court finding that essential basis of statutory proceeding to set aside a fraudulent conveyance is indebtedness ordinarily enforced in an action of contract); *Branch v. FDIC,* 825 F.Supp. 384, 420 (D.Mass.1993) (citing cases where courts have applied quasi-contractual statutes of limitations); *see also In re Morse Tool, Inc.,* 108 B.R. 384, 386 (Bankr.D.Mass.1989). The court need not characterize the defendants' claims for purposes of the motion to dismiss since the action was filed within the period prescribed by § 1821(d)(14) regardless of whether the allegations are construed as contract or tort claims.