**UNITED STATES OF AMERICA,**
**Plaintiff–Appellee,**

v.

**Mark H. MOORE, Sr., Mark H. Moore, Inc., a Georgia Corporation, Frances S. Moore, Mark H. Moore, Jr., Awtrey Cole Moore, II, Defendants–Appellants.**

**No. 91–8581.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 13, 1992.

Gordon H. Smith, King & Spaulding, Atlanta, Ga., for defendants-appellants.

Amy Berne Kaminshine, Daniel H. Caldwell, Asst. U.S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and RONEY, Senior Circuit Judge.

BIRCH, Circuit Judge:

Appellants Mark H. Moore, Sr. ("Moore"), Mark H. Moore, Inc., Frances S. Moore, Mark H. Moore, Jr., and Awtrey Cole Moore, II appeal the ruling by the United States District Court for the Northern District of Georgia that the applicable statute of limitations did not bar the government's claim of fraudulent conveyance against Moore. Moore claims that the district court erred by applying the federal statute of limitations, *see* 28 U.S.C. §§ 2415–2416 (1988), as opposed to the Georgia statute of limitations. We conclude that the district court correctly applied the federal statute of limitations in this case, and we AFFIRM.

### I. BACKGROUND

On July 14, 1978, the Etowah Bank ("Etowah"), acting in participation with the Small Business Administration ("SBA"), loaned $550,000 to Cello–Therm Insulation ("Cello–Therm"). Moore, along with the

two other principals and owners of Cello–Therm, personally guaranteed payment of the promissory note issued by Cello–Therm in connection with the loan. Moore's personal financial statement of February, 1978, on which Etowah relied in issuing Cello–Therm an SBA loan, reflected that Moore had total assets of $2,937,865 and a net worth of $2,472,518. Cello–Therm experienced financial difficulties from its commencement, and on June 14, 1981, it failed to make its first installment payment due on the $550,000 note to Etowah. Meanwhile, an additional $100,000 SBA loan had been made by Etowah to Cello–Therm and guaranteed by Moore. Cello–Therm also failed to make the first payment on this loan. Upon these defaults, Moore became personally liable for all unpaid principal and accumulated interest owed by Cello–Therm.

Shortly thereafter, Moore began to divest himself of the real property he owned. Commencing in 1981, he transferred all of his property for little or no consideration to his wife, his two sons, and his closely-held corporation. Etowah filed suit on August 1, 1983, in the Superior Court of Cherokee County, Georgia, to recover on Moore's notes. By letter dated February 14, 1986, counsel for Moore informed counsel for Etowah that Moore was unable to honor his individual liability on the $550,000 note. Attached to the letter was Moore's financial statement as of February, 1986, revealing assets of $25,900 and liabilities of $77,500. On January 7, 1989, Etowah assigned its rights in the Cello–Therm/Moore promissory note to the SBA.

On January 20, 1989, the instant action was filed in the district court by the SBA. The district court entered judgment in favor of the government, finding all but one of the challenged property transfers made by Moore to be fraudulent conveyances and, therefore, void. Moore appeals the district court's finding that the SBA's claim was not time-barred on the basis that the district court applied the wrong statute of limitations.

## II. DISCUSSION

In essence, Moore's claim on appeal is that the district court should have approached the statute of limitations question by separately analyzing the timeliness of the two actions filed by the consecutive plaintiffs. Moore argues that the state statute of limitations, applicable to Etowah's claim of fraudulent conveyance filed in state court, had already run at the time Etowah transferred its claim against Moore to the SBA. Moore contends that because Etowah's suit was untimely, there was no claim held by Etowah for it to transfer to the SBA and therefore no claim to which the district court could apply the federal statute of limitations. We find this argument unpersuasive.

The SBA has its own rights against Moore. The loan which Moore guaranteed on behalf of the company which he partially owned was an SBA loan. Etowah made this loan available to Cello–Therm based on the federal statutes providing for government guaranteed loans to qualifying small businesses. *See generally* 15 U.S.C. §§ 631–647 (1988). In the event that the bank was unable to recover on the promissory note executed in return for this loan, the SBA guaranteed a large portion of the amount due to the bank. After making a payment on such a guarantee, the SBA would hold any claim against the borrower previously held by the bank. In this manner, the SBA was a potential creditor of Moore's from the moment Moore accepted the SBA loan from Etowah.

■ Therefore, the federal statute of limitations applies to the SBA's federal claim. We approach this issue recognizing that "[i]t is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); *see United States v. Fernon*, 640 F.2d 609, 612 (5th Cir. Unit B March 1981) (following *Summerlin*). Therefore, the district court properly regarded the running of the state statute of limitations as irrelevant and applied the applicable federal provisions, *see* 28 U.S.C. §§ 2415–2416 (1988).

We also find the Ninth Circuit's analysis of the issue at hand persuasive. *See Unit-*

ed States v. Neidorf, 522 F.2d 916 (9th Cir.1975), cert. denied, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976). In *Neidorf*, the court found that even if fraudulent conveyance actions are generally governed by state law, "when brought by the United States, the limitation must be determined by reference to section 2415." *Id.* at 920 n. 6. We reject Moore's contention that the issue presented in this case is significantly distinguishable from the situation in *Neidorf* because here the government's claim followed on the heels of Etowah's claim. In essence, to accept Moore's position would render the federal statute of limitations provisions, 28 U.S.C. §§ 2415–2416(c), a nullity in some circumstances, leaving the federal government subject to a statute of limitations for which Congress did not provide.

The district court properly found that a fraudulent conveyance action is a quasi-contractual claim, and therefore subject to the six-year statute of limitations set forth in section 2415(a). *See Neidorf*, 522 F.2d at 918–920. In our reading of the federal statute of limitations provisions, we are bound to apply the general rule that "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.'" *United States v. Ron Pair Enter.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). Section 2415(a) provides that "[s]ubject to the provisions of section 2416 of this title, ... every action for money damages brought by the United States ... which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues...." 28 U.S.C. § 2415(a). Section 2416 dictates that the right of action accrues at the point when "facts material to the right of action" are known or should have been known by a government official who is "charged with the responsibility to act in the circumstances." *Id.* § 2416.

The district court found that an official of the government did not learn of the material facts giving rise to this action until February 14, 1986. Moore does not challenge this finding by the district court; moreover, we conclude that the finding was not clearly erroneous. Measuring from this date, the government clearly asserted its claim within the federal statute of limitations—six years. For us to find this action time-barred as to the government without regard to when the responsible government official knew or had reason to know of the fraudulent conveyances would require us to read section 2416 out of the statute and subject the federal government to a statute of limitations for which it did not provide. *See Summerlin*, 310 U.S. at 416, 60 S.Ct. at 1020.

### III. CONCLUSION

For the foregoing reasons, we find that 28 U.S.C. §§ 2415–2416 apply to the government's fraudulent conveyance claim against Moore, and we AFFIRM the judgment of the district court.