111 T.C. No. 6


UNITED STATES TAX COURT



PETER J. BRESSON, TRANSFEREE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22824-96.                    Filed August 19, 1998.


        In July 1990, J, a corporation, transferred to
petitioner, its sole shareholder, real property situated
in California (the Alhambra property) without receiving
a reasonably equivalent value in exchange therefor.
Immediately thereafter, petitioner sold the Alhambra
property for $329,000 to an unrelated third party.
Petitioner kept the proceeds from the sale.  On Mar. 5,
1993, J filed a tax return for its fiscal year ended Feb.
28, 1991, reporting a capital gain of $194,705 from the
sale of the Alhambra property and a tax due of $49,683,
which was not paid.  On Aug. 1, 1993, petitioner executed
a promissory note to J for repayment of a purported
obligation owed by petitioner to J.

        On Aug. 2, 1996, respondent issued a notice of
transferee liability to petitioner as a transferee under
sec. 6901, I.R.C.  Respondent determined, on the basis of
California's   Uniform   Fraudulent   Transfer   Act
(California's UFTA), that petitioner was liable for J's

taxes resulting from the transfer of the Alhambra property.

Petitioner asserts that the period of limitations for filing fraudulent conveyance actions under California's UFTA expired before the issuance of the notice of transferee liability. Respondent maintains that the Federal Government is not bound by State statutes of limitations under the rule in United States v. Summerlin, 310 U.S. 414 (1940). Petitioner counters that the period of limitations in California's UFTA is not a statute of limitations, but rather is an element of the cause of action, which provides for the complete extinguishment of the fraudulent conveyance claim if the time limit is not satisfied, relying on United States v. Vellalos, 780 F. Supp. 705 (D. Haw. 1992), appeal dismissed 990 F.2d 1265 (9th Cir. 1993).

1.   Held: Respondent has established that the Alhambra property was fraudulently conveyed under California law.

2.   Held, further, respondent is not bound by the limitations period in California's UFTA. United States v. Summerlin, supra, applied.

3.   Held, further, respondent issued petitioner a notice of transferee liability within the limitations period for assessments prescribed by sec. 6901(c), I.R.C.

Willard D. Horwich, for petitioner.

Robert H. Schorman, Jr., for respondent.

JACOBS, Judge: By means of a notice of transferee liability dated August 2, 1996, respondent determined that petitioner is liable under section 6901 as a transferee of property from Jaussaud Enterprises, Inc. (hereinafter referred to as Jaussaud Enterprises or the corporation), for unpaid Federal corporate income taxes and

additions to tax due from Jaussaud Enterprises, as follows:

| Year Ended | Income Tax | Additions to Tax | | |
|---|---|---|---|---|
| | | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
| 2/28/91 | $41,965 | $9,803 | $10,716 | $2,487 |

Unless indicated otherwise, all section references are to the Internal Revenue Code for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The disputed transferee liability arises as a result of the conveyance of certain real property from Jaussaud Enterprises to petitioner during 1990. We must herein decide whether petitioner is liable as a transferee under section 6901 as a result of that conveyance. In resolving this issue, we must decide whether by virtue of section 3439.09 of the California Civil Code (West 1997) the period of limitations for assessing transferee liability against petitioner expired before respondent's issuance of the notice of transferee liability. Subsumed in this latter issue is the question of whether the Commissioner is bound by a State limitations period when relying on State law to collect unpaid taxes.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of facts and the attached exhibits are incorporated herein by this reference.

At the time the petition was filed, petitioner resided in Los Angeles, California. Petitioner is unmarried. He filed his tax

returns on a calendar year basis.

## Jaussaud Enterprises

Jaussaud Enterprises is a California corporation with a fiscal year ending February 28. At all relevant times, petitioner was the sole shareholder and sole officer of Jaussaud Enterprises.

Jaussaud Enterprises operated an equipment leasing business, providing trash cans and containers for the rubbish pickup industry. The corporation's principal customer was PJB, a corporation all the stock of which was owned by petitioner and his mother (who died in 1988, leaving petitioner as the sole shareholder of PJB). By 1991, Jaussaud Enterprises' business activity was minimal.

## Transfer of Real Property

Jaussaud Enterprises was the owner of improved real property located at 905 N. Hidalgo Avenue, Alhambra, California (the Alhambra property). Located on the Alhambra property was a house in which petitioner resided.

Petitioner decided to sell the Alhambra property. A potential buyer of the Alhambra property was found, and on June 11, 1990, petitioner, on behalf of Jaussaud Enterprises, executed escrow instructions at Atla Escrow Corp. (Atla Escrow) pursuant to which the Alhambra property was to be sold for $329,000 to Ming Eo Jessica Sung, an unrelated third party. The escrow instructions were amended on June 12 and 20, 1990, to account for various

details and contingencies relating to the anticipated sale. On July 5, 1990, the escrow instructions were again amended to change the identification of the seller to "PETER J. BRESSON, an unmarried man".

On July 5, 1990, Jaussaud Enterprises executed a grant deed conveying the Alhambra property to petitioner.[1] On the same date petitioner executed a grant deed conveying the Alhambra property to Ms. Sung.

On July 25, 1990, Atla Escrow sent petitioner a closing statement with regard to the sale of the Alhambra property, together with a check in the amount of $266,680.44, representing the net proceeds due the seller. Petitioner kept the $266,680.44.

The closing statement indicated that $38,900 had been transferred by wire to "Western Pacific Escrow #16848".[2] The balance of the consideration paid by Ms. Sung was disbursed for a realtor's commission, taxes, escrow fees, and other expenses related to the sale of the Alhambra property.

---

[1] The deed reported no transfer tax due, and stated: "This conveyance changes the manner in which title is held, grantor(s) (Corporation) and Grantee(s) remain the same and continue to hold the same proportionate interest, R & T 11911."
Pursuant to California law, no transfer tax is due where the consideration exchanged is $100 or less. Cal. Rev. & Tax. Code sec. 11911 (West 1994).

[2] The record is void of any explanation for the wire transfer or the purpose of the Western Pacific escrow account.

Reporting Sale of Alhambra Property

On its U.S. Corporation Income Tax Return, Form 1120, for tax year ended February 28, 1991, filed on March 5, 1993, Jaussaud Enterprises reported a capital gain of $194,705[3] from the sale of the Alhambra property.  Jaussaud Enterprises also reported gross receipts of $1,210, which resulted in a reported Federal income tax liability of $49,683 for the tax year ended February 28, 1991, which was not paid.  The return was signed by petitioner, as corporate president.

Petitioner did not report any gain from the sale of the Alhambra property on his U.S. Individual Income Tax Return, Form 1040, for any year.

Promissory Note

At an undisclosed time following the sale of the Alhambra property, petitioner sought professional advice with respect to the tax consequences of Jaussaud Enterprises' transfer of the Alhambra property to him and the subsequent sale of that property.  On July 15, 1993, petitioner, as president of Jaussaud Enterprises, called a special meeting of the board of directors (which consisted solely of himself) and determined that he owed the corporation $125,000. (The record is void of any explanation as to how the amount of petitioner's debt to Jaussaud Enterprises was determined to be

---

[3]     The gain on the sale of the Alhambra property was calculated as follows:  $329,000 (gross proceeds) + $28,130 (depreciation previously allowed) - $162,425 (basis) = $194,705.

$125,000.) To repay this debt, petitioner agreed to execute a note providing for monthly installments of $798.32 each for 30 years, with interest at 6.6 percent per annum.[4] On August 1, 1993, petitioner executed such a note. Beginning August 4, 1993, and continuing through September 11, 1996, petitioner made the required monthly payments to Jaussaud Enterprises. After September 1996, petitioner made no further payments on the note.

Internal Revenue Service Actions

The Internal Revenue Service (IRS) sent several billing notices to Jaussaud Enterprises. These notices mistakenly listed the tax period involved as the year ended February 29, 1992. On July 25, 1994, the IRS recorded in Los Angeles County a Notice of Federal Tax Lien for Jaussaud Enterprises. The Notice of Federal Tax Lien listed $117.73 as being owed for employment taxes for the tax year ended December 31, 1993, and $79,207.53 as being owed for corporation income taxes for the tax year ended February 28, 1992.[5]

William Ryland, an IRS revenue officer, was assigned to

---

[4] The corporation adopted a resolution at the July 15, 1993, meeting which stated:

> RESOLVED, that the corporation shall accept a
> promissory note from Peter J. Bresson, payable $798.32
> a month, the first payment to be made on August 1,
> 1993, and said note to continue for 30 years at an
> interest rate of 6.6%.

[5] The corporation made a payment of $1,603.76 on Aug. 24, 1993, and received a credit against its assessment.

collect the taxes owed by Jaussaud Enterprises. He attempted to locate assets of Jaussaud Enterprises, but his efforts proved unsuccessful. At an undisclosed time, a representative of Jaussaud Enterprises, presumably Willard D. Horwich (petitioner's counsel), offered to satisfy the corporation's tax liability by way of a "long-term" installment plan. Revenue Officer Ryland rejected the proposed arrangement because the period of limitations to collect the delinquent taxes would have expired prior to full collection under the proposed plan. Ultimately, in a Report of Investigation of Transferee Liability dated September 21, 1994, Revenue Officer Ryland recommended that the IRS seek to collect the delinquent taxes from petitioner as a transferee.

No notice of deficiency was issued to Jaussaud Enterprises for the tax year ended February 28, 1991, but an assessment was made against Jaussaud Enterprises for that year on February 28, 1996.

Respondent sent a notice of transferee liability to petitioner dated August 2, 1996, determining that he was liable as a transferee of the Alhambra property for Jaussaud Enterprises' tax year ended February 28, 1991.

In October 1996, the collection file was assigned to Revenue Officer Donald Dinsmore. He searched for assets which the IRS could levy against. He checked IRS internal sources for financial and other information concerning Jaussaud Enterprises; he also searched Department of Motor Vehicles and real property records.

He found no assets which could be used to collect the tax liabilities from Jaussaud Enterprises.

On November 13, 1996, the IRS issued a final demand letter which was received and signed for (but not responded to) by Jaussaud Enterprises.

## OPINION

### Evidentiary Matters

Preliminarily, we address various evidentiary matters.

At trial, petitioner contended that respondent assessed taxes against Jaussaud Enterprises for the wrong year. Respondent's witness, Vicki McIntire, credibly testified about the error, which occurred as a result of the filing of corporate income tax returns for fiscal years ended February 28, 1991, and February 29, 1992, at approximately the same time in 1993, and the subsequent correction of the error by respondent. In that vein, petitioner objected to, as hearsay, the admission into evidence of Exhibit AA, Summary Record of Assessments, and Exhibit BB, Certificate of Assessments and Payments, to prove the existence of Jaussaud Enterprises' tax liability.

Rule 803 of the Federal Rules of Evidence provides numerous exceptions to the hearsay rule. As pertinent herein, rule 803(8) provides an exception for:

> (8) Public records and reports.--Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to

duty imposed by law as to which matters there was a duty to report * * * unless the sources of information or other circumstances indicate lack of trustworthiness.

Exhibits AA and BB are both public records or reports prepared by respondent pursuant to a duty imposed by law.

Exhibit AA does not indicate the taxpayer's name. Thus, we conclude that this document lacks trustworthiness. Consequently, we sustain petitioner's objection to Exhibit AA.

Exhibit BB reflects that an <u>audit deficiency</u> <u>assessment</u> of $43,569 was made for the year ended February 28, 1991, and a reported <u>tax return assessment</u> of $49,683 was made for the year ended February 29, 1992--which was later abated because no tax was owing for that year. The record contains no explanation as to why an audit deficiency assessment was made (nor the basis for it) for the year ended February 28, 1991, or as to why a tax return assessment (of $49,683) was not made for that same year. Petitioner contends on brief that without the admission of Exhibits AA and BB, there is no evidence to demonstrate an existing liability in the form of an assessment against Jaussaud Enterprises--and thus respondent can not establish that the transferor owes taxes for which petitioner may be liable as a transferee. Petitioner also asserts that even if Exhibit BB is admitted, the audit deficiency assessment for the year ended February 28, 1991, was improper under section 6213 because no notice of deficiency for that year was issued to the transferor.

Exhibit BB, which was certified as true and to which respondent's witness credibly testified, shows an assessment against Jaussaud Enterprises for the year ended February 28, 1991. We find the information in the document accurately reflects the existence of a tax liability owed by Jaussaud Enterprises. Accordingly, we overrule petitioner's objection to the admission of Exhibit BB. Further, respondent's failure to issue a notice of deficiency against Jaussaud Enterprises is immaterial. A notice of deficiency need not be issued in order for the Commissioner to assess a taxpayer for a reported tax liability on a tax return. See sec. 6201(a)(1). Moreover, the Commissioner is not required to issue a notice of deficiency or to make an assessment against the transferor where efforts to collect delinquent taxes from a transferor would be futile. Gumm v. Commissioner, 93 T.C. 475, 484 (1989), affd. without published opinion 933 F.2d 1014 (9th Cir. 1991), and cases cited therein; see also O'Neal v. Commissioner, 102 T.C. 666, 675-676 (1994). In this regard, respondent presented two witnesses, both IRS revenue officers, who credibly testified as to their searches for assets owned by the corporation and their inability to find any such assets or any evidence of the corporation's capacity to pay the taxes owed. Consequently, whether an audit deficiency (or tax return) assessment was made against Jaussaud Enterprises is not relevant. Jaussaud Enterprises' income tax return for the year ended February 28,

1991, clearly indicates taxes owed of $49,683 (which have not been paid except for a $1,603.76 payment made on August 24, 1993). Thus, respondent has established the existence of a liability owing by Jaussaud Enterprises for which petitioner may be held liable as a transferee. See sec. 6901(b) (providing that transferee liability may relate either to the amount shown on a tax return or to any deficiency).

Finally, petitioner objected to the admission of Exhibit HH, a letter from Willard D. Horwich, petitioner's counsel, to James Canny, petitioner's accountant. Petitioner claims that the letter is inadmissible because it falls within the attorney-client privilege. We need not decide whether the attorney-client privilege is applicable (and we did not consider Exhibit HH) because the admission, or exclusion, of Exhibit HH is moot inasmuch as we hold petitioner is liable as a transferee under section 6901 for the reasons set forth infra.

Transferee Liability

The issue for decision is whether petitioner is liable for taxes owed by Jaussaud Enterprises as a result of the corporation's transfer to petitioner of the Alhambra property.

Respondent suggests two bases for claiming that Jaussaud Enterprises owes taxes as the result of the transfer of the Alhambra property to petitioner. One is that Jaussaud Enterprises was the seller of the Alhambra property to the unrelated third

party and petitioner served merely as the straw man. The second is that Jaussaud Enterprises made a distribution of appreciated property to petitioner with respect to Jaussaud Enterprises stock, in which case the corporation must recognize gain on the transfer as if the corporation sold the property to petitioner. Sec. 311(b). We need not decide which basis applies because in either scenario Jaussaud Enterprises would realize the same amount of income.

Section 6901(a)(1)(A) authorizes the assessment of transferee liability in the same manner as the taxes in respect of which the tax liability was incurred. It does not create a new liability, but merely provides a remedy for enforcing the existing liability of the transferor. Coca-Cola Bottling Co. v. Commissioner, 334 F.2d 875, 877 (9th Cir. 1964), affg. 37 T.C. 1006 (1962); Mysse v. Commissioner, 57 T.C. 680, 700-701 (1972). The Commissioner has the burden of proving all the elements necessary to establish the taxpayer's liability as a transferee except for proving that the transferor was liable for the tax. Sec. 6902(a); Rule 142(d). In the case at hand, the existence and the amount of the transferor's tax liability have been established.

We examine State law to determine the extent of a transferee's liability for the debts of a transferor. Commissioner v. Stern, 357 U.S. 39, 45 (1958); Hagaman v. Commissioner, 100 T.C. 180, 183-185 (1993); Gumm v. Commissioner, supra at 479-480. Because the

conveyance of the Alhambra property occurred in California, we examine California law. See <u>Adams v. Commissioner</u>, 70 T.C. 373, 389 (1978), affd. in part without published opinion and dismissed in part 688 F.2d 815 (2d Cir. 1982).

In 1986, California adopted the Uniform Fraudulent Transfer Act (UFTA), which applies to transfers made or obligations incurred on or after January 1, 1987. Cal. Civ. Code sec. 3439.12 (West 1997). The transfer at issue in this case--the conveyance of the Alhambra property from Jaussaud Enterprises to petitioner--occurred in July 1990. Thus, the UFTA applies herein.

California's UFTA contains two provisions for determining whether a fraudulent conveyance occurred. The provision we believe applicable in this case is section 3439.04[6] of the California Civil Code (1997), which provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation incurred, if the debtor made the transfer or incurred the obligation as follows:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.

---

[6] The other potentially applicable provision is Cal. Civ. Code sec. 3439.05 (West 1997), which relates to constructive fraud that occurs <u>after</u> a creditor's claim arises. Arguably, that is not the case here because the transfer from Jaussaud Enterprises to petitioner created respondent's claim for tax, and that transfer occurred <u>before</u> respondent's claim arose. However, we need not decide this issue because either Cal. Civ. Code sec. 3439.04(b)(1) or (2) (West 1997) provides other bases for finding constructive fraud.

(b)  Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(1)  Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(2)  Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

The record is void of any evidence to support a finding that petitioner (who entirely controlled Jaussaud Enterprises) had the requisite intent to satisfy section 3439.04(a) of the California Civil Code.  Petitioner lacked any knowledge of taxes or the preparation of tax returns.  He relied entirely on his accountant, James Canny, for preparing his tax returns.

In addition, it is clear that petitioner did not understand the tax consequences of the transfer of the Alhambra property from Jaussaud Enterprises to himself followed by the sale to the third party.  Petitioner credibly testified that he caused the transfer of the property to himself because he was told by the title company that the title had to be in an individual's name for the sale to be completed. When petitioner's accountant learned of the transaction nearly a year later, the accountant told petitioner that he might be indebted to Jaussaud Enterprises.  The accountant told petitioner to seek further tax advice.  Nearly 3 years after the transaction, petitioner executed a promissory note in favor of Jaussaud Enterprises, apparently to prevent the appearance of a

corporate distribution or some other event that would impose tax liability on either the corporation or petitioner.

The record, however, supports a finding that the conveyance from Jaussaud Enterprises to petitioner satisfies the requirements for constructive fraud under section 3439.04(b)(1) and/or (2) of the California Civil Code. Jaussaud Enterprises did not receive reasonably equivalent value in exchange for the transfer of the Alhambra property to petitioner; in fact, Jaussaud Enterprises received nothing for the property (which was sold for $329,000 in an arm's-length transaction on the same day). Moreover, we do not believe the note which petitioner executed in favor of Jaussaud Enterprises represented a quid pro quo for the transfer of the Alhambra property: (1) The promissory note was executed 3 years after the conveyance to petitioner on the advice of a tax professional (and the face amount of the note ($125,000) was approximately $200,000 less than the amount realized ($329,000) from the sale of the Alhambra property); (2) petitioner did not understand that his receipt of the Alhambra property (or the sale proceeds) constituted a loan from the corporation; and (3) we do not believe the corporation ever intended to enforce the note's terms (for example, the corporation took no legal action after petitioner stopped making monthly payments).

On Schedule L, Balance Sheets, of the income tax return belatedly filed by Jaussaud Enterprises for the tax year ended

February 28, 1991, there were only two items listed as assets existing as of the end of the tax year: $264 in cash and $192,308[7] as "other current assets" which was identified as "note receivable--P. Bresson". When asked about this receivable, petitioner testified: "I really don't know what that is." In petitioner's initial brief, petitioner treats the purported receivable as "consideration from Bresson back to the corporation for whatever Bresson received, whether it be the property or whether it be the proceeds of sale."

Schedule L also reflects that Jaussaud Enterprises had current liabilities as of February 28, 1991, in the amount of $67,450 ($49,683 as Federal tax payable and $17,767 as State tax payable) and retained earnings of $125,122.

We believe the purported $192,308 receivable was merely bookkeeping legerdemain. The purported receivable was created by Mr. Canny, petitioner's accountant, long after the transfer of the Alhambra property and without petitioner's knowledge of its existence or import. Accordingly, we find the purported $192,308 receivable was not an asset of the corporation. Thus, the only asset remaining after the transfer of the Alhambra property ($264 in cash) was insufficient for the corporation to pay its debts. Consequently, we hold that respondent has established that the

---

[7] Apparently, the $125,000 note executed on Aug. 1, 1993, was intended to replace this $192,308 purported receivable.

transfer to petitioner was in constructive fraud of creditors under section 3439.04(b)(1) and/or (2) of the California Civil Code.

Although this holding would appear to resolve this case, petitioner raises an issue that at first glance "seems overly ambitious".  See Bankers Life & Cas. Co. v. United States, 142 F.3d 973, 974 (7th Cir. 1998).  We shall now address this issue.

Period of Limitations

Petitioner argues that even if a fraudulent conveyance is deemed to have occurred under the UFTA, the period of limitations for filing actions under the UFTA expired before respondent's issuance of a notice of transferee liability.  This, according to petitioner, would preclude respondent from using section 6901 as a remedy to collect the delinquent taxes of Jaussaud Enterprises.  On the other hand, respondent maintains that State limitations periods may not cut short the time the Federal Government has to assess and collect the tax liability of petitioner as a transferee under section 6901.  For the reasons set forth below, we agree with respondent.

Section 6901(c) provides that the Commissioner may assess a transferee for taxes owed by a transferor within 1 year after the expiration of the period of limitations for assessment against the transferor.  In the case at bar, Jaussaud Enterprises filed its Federal corporation income tax return for the tax year ended February 28, 1991, on March 5, 1993. (Generally, under section

6501, the period of limitations for assessments against a taxpayer is 3 years from the filing of the tax return.) Therefore, the period of limitations for making an assessment against Jaussaud Enterprises expired on March 5, 1996, and the Commissioner could assess petitioner's transferee liability at any time up to March 5, 1997. The notice of transferee liability to petitioner from respondent was dated August 2, 1996. Thus, pursuant to section 6901(c), respondent's notice of transferee liability to petitioner was timely.

Section 3439.09 of the California Civil Code provides:

A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished * * *:

(a) Under subdivision (a) of Section 3439.04, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant.

(b) Under subdivision (b) of Section 3439.04 or Section 3439.05, within four years after the transfer was made or the obligation was incurred.

Petitioner asserts that the UFTA limitations period applies, rather than the limitations period under section 6901(c), and therefore the period of limitations for assessment against petitioner expired prior to respondent's issuance of the notice of transferee liability to petitioner. Petitioner further claims that even if respondent did not originally know of the transfer, respondent obtained such knowledge by September 1994, the date of

Revenue Officer Ryland's transferee liability report discussing the conveyance. (This assumes, of course, that section 3439.04(a) of the California Civil Code is applicable, which we have found supra it was not.) Thus, 1 year from the date of respondent's knowledge of the transfer would have been no later than September 1995, still nearly 1 year short of the date of the notice of transferee liability against petitioner. Accordingly, we are required to determine which period of limitations, Federal or State, controls the time for assessing transferee liability.

The Supreme Court has stated that the United States is not bound by State statutes of limitations in enforcing its rights, whether the action is brought in Federal or State court. United States v. Summerlin, 310 U.S. 414, 416 (1940), and cases cited thereat. Petitioner contends, however, that section 3439.09 of the California Civil Code is not a statute of limitations, but rather is an element of the cause of action which provides for the complete extinguishment of the fraudulent conveyance claim (and thus the transferee liability) where the time limit is not satisfied.

Petitioner relies on United States v. Vellalos, 780 F. Supp. 705 (D. Haw. 1992), appeal dismissed 990 F.2d 1265 (9th Cir. 1993), in arguing that California's UFTA limitations period requires an outcome different than that in United States v. Summerlin, supra. In Vellalos, the United States District Court for Hawaii examined

Hawaii's UFTA statute, which is identical to the relevant California statute now before us. Therein, nearly 1 year after the limitations period expired under the Hawaii UFTA, the Federal Government sought to foreclose on property conveyed to the defendant. (The United States proceeded directly under the UFTA to obtain its remedy because the limitations period under section 6901(c) for transferee liability had expired.) The United States argued that it was not bound by the Hawaii UFTA limitations period because of the rule in United States v. Summerlin, supra.

The court interpreted the UFTA's limitations period not as a statute of limitations with respect to Federal transferee liability, but rather as an element of the cause of action for fraudulent conveyance which would be entirely extinguished if not timely filed. In applying the UFTA's limitations period, the court rejected the Government's argument, stating that "There is an important distinction between cases involving the government's common law right to collect on a debt and cases involving a carefully delimited state statutory right." United States v. Vellalos, supra at 707. The court distinguished the Florida statute in Summerlin from Hawaii's UFTA on the basis that the latter contained an extinguishment provision for a State-created cause of action whereas the former imposed a limitations period on an action arising out of a Federal statute (the Act of June 27, 1934, 48 Stat. 1246). The court noted the explicit intent of the

drafters of the UFTA in their commentary to avoid the rule of Summerlin through the creation of the claim extinguishment provision:

> "This section is new. Its purpose is to make clear that lapse of the statutory periods prescribed by the section bars the right and not merely the remedy.... The section rejects the rule applied in the United States v. Gleneagles Inv. Co., 565 F. Supp. 556, 583 (M.D. Pa. 1983) (state statute of limitations held not to apply to action by United States based on Uniform Fraudulent Conveyance Act)."

United States v. Vellalos, supra at 707 (quoting Uniform Fraudulent Transfer Act sec. 9 (Commentary), 7A U.L.A. 665-666 (1984)). (The same language appears in the Legislative Committee Comment of the California Assembly in its 1986 adoption of the UFTA. Cal. Civ. Code sec. 3439.09 (Legislative Committee Comment--Assembly).) The court went on to find that the State had the authority to extinguish the cause of action, referring to the 10th Amendment to the United States Constitution. The court stated that the Federal Government was seeking to extend Summerlin beyond its holding to cover all State laws which could be affected by the common law right of the Government to collect its debts. The court suggested the Government create its own Federal fraudulent conveyance statute with an unlimited limitations period to remedy the problem.[8]

---

[8] We are mindful that as part of the Crime Control Act of 1990, Pub. L. 101-647, sec. 3611, 104 Stat. 4959, Congress created provisions for voiding fraudulent transfers as to debts to the United States, and established applicable limitations periods. The effective date of the fraudulent transfer

(continued...)

The decision in <u>United States v. Vellalos</u>, <u>supra</u>, has been the subject of much discussion and has been generally rejected by other District Courts in tax collection cases where the Government has sought to foreclose on property transferred to third parties. See, e.g., <u>United States v. Cody</u>, 961 F. Supp. 220 (S.D. Ind. 1997); <u>United States v. Kattar</u>, 97-1 USTC par. 50,132 (D.N.H. 1996); <u>United States v. Smith</u>, 950 F. Supp. 1394 (N.D. Ind. 1996); <u>United States v. Zuhone</u>, 78 AFTR 2d 96-5106, 96-2 USTC par. 50,366 (C.D. Ill. 1996); <u>United States v. Hatfield</u>, 77 AFTR 2d 96-1969, 96-2 USTC par. 50,342 (N.D. Ill. 1996); <u>Flake v. United States</u>, 76 AFTR 2d 95-6957, 95-2 USTC par. 50,588 (D. Ariz. 1995); <u>Stoecklin v. United States</u>, 858 F. Supp. 167 (M.D. Fla. 1994). The District Court for the Eastern District of California, however, approved the reasoning of <u>Vellalos</u> in examining California's UFTA provisions, but held for the Government on other grounds. <u>United States v. Wright</u>, 76 AFTR 2d 95-7526, 96-1 USTC par. 50,005 (E.D. Cal. 1995), affd. without published opinion 87 F.3d 1325 (9th Cir. 1996).

The Court of Appeals for the Ninth Circuit, the court to which an appeal in this case lies, recognized the issue raised in <u>Vellalos</u>, but found it did not have the occasion to address it (although the court did conclude that the UFTA contained a claim extinguishment provision). <u>United States v. Bacon</u>, 82 F.3d 822

---

[8](...continued)
provisions therein is subsequent to the date of the transfer involved in the instant case.

(9th Cir. 1996) (considering the UFTA as adopted by the State of Washington).  Other Courts of Appeals, however, have addressed this issue (albeit without great elaboration) and have applied the rule in <u>Summerlin</u> to actions under the UFTA or other statutory provisions, as well as actions under common law.  See <u>United States v. Wurdemann</u>, 663 F.2d 50 (8th Cir. 1981); <u>United States v. Fernon</u>, 640 F.2d 609 (5th Cir. 1981); see also <u>United States v. Moore</u>, 968 F.2d 1099 (11th Cir. 1992).  (The District Court in <u>United States v. Vellalos</u>, <u>supra</u> at 708 n.3, criticized the decisions in <u>Fernon</u> and <u>Wurdemann</u> as "an overly mechanical application of the dicta in <u>Summerlin</u> without serious consideration of the significant implications such a rule has for state sovereignty".)

The situation in <u>Vellalos</u> is factually distinguishable from the situation herein.  In <u>Vellalos</u>, the Government was unable to invoke section 6901 because it missed the limitations period prescribed by subsection (c).  Therefore, it relied on State foreclosure proceedings as a means for collection.[9]  (It is unclear whether the District Court in <u>Vellalos</u> would have reached its same conclusion had the Government proceeded timely under section 6901.)  Here, however, respondent has proceeded timely

---

[9]    In <u>United States v. California</u>, 507 U.S. 746, 758 (1993), the Supreme Court recognized that it is "a difficult question" whether a State law action brought by the United States is subject to Federal or State limitations periods.  See <u>Santiago v. United States</u>, 884 F. Supp. 45 (D.P.R. 1995); <u>United States v. Perrina</u>, 877 F. Supp. 215, 218 n.5 (D.N.J. 1994).

under section 6901 and is using that section rather than State law to assert a claim against petitioner as transferee. (In this regard, we disagree with the dissent's assertion that respondent's claim against petitioner is not created under Federal law, but rather under California's UFTA. See Dissenting op. p. 33.) Therefore, petitioner's reliance on <u>Vellalos</u> is misplaced.[10]

Further, the Court of Appeals for the Ninth Circuit has not affirmatively approved of the District Court's exception in <u>Vellalos</u> to the general rule of <u>United States v. Summerlin</u>, 310 U.S. 414 (1940), with respect to limitations periods in transferee liability cases.[11] <u>United States v. Bacon</u>, <u>supra</u>. Accordingly, we are not bound to follow any such exception. See <u>Golsen v. Commissioner</u>, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir.

---

[10]    The dissent's reliance on <u>Custer v. McCutcheon</u>, 283 U.S. 514 (1931), is similarly misplaced.  Dissenting op. p. 34. Like the situation in <u>United States v. Vellalos</u>, 780 F. Supp. 705 (D. Haw. 1992), in <u>Custer</u> the United States pursued its remedies under State law rather than under Federal law.  Therefore, the situation in <u>Custer</u> is distinguishable from the situation herein. Moreover, it should be noted that <u>Custer</u> was decided several years before <u>United States v. Summerlin</u>, 310 U.S. 414 (1940).

[11]    The Court of Appeals for the Ninth Circuit has created an exception to the general rule of <u>United States v. Summerlin</u>, <u>supra</u>, "[such] that a state statute which provides a time limitation as an element of a cause of action or as a condition precedent to liability applies to suits by the United States even if there is an otherwise applicable federal statute of limitations." <u>United States v. California</u>, 655 F.2d 914, 918 (9th Cir. 1980) (citing <u>United States v. Hartford Accident & Indem. Co.</u>, 460 F.2d 17, 19 (9th Cir. 1972)).  The Court of Appeals for the Ninth Circuit, however, has never applied this exception in transferee liability cases.

1971). Consequently, the situation before us is one of first impression, and we are free to adopt our own interpretation of the rule in United States v. Summerlin, supra.

In United States v. Summerlin, supra, the Supreme Court addressed a claim of the United States against an estate in Florida. (A county judge in Florida denied the Government's petition to allow the claim, which arose under a Federal statute, determining that the claim was "void" because it was not filed within 8 months from the time of the first publication of the notice to creditors as required by Florida law.) The Supreme Court, in holding that the United States was not bound by State statutes of limitations (or subject to the defense of laches) in enforcing its rights, stated that "When the United States becomes entitled to a claim, acting in its governmental capacity and asserts its claim in that right, it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement." Id. at 417. The Court then recognized that the Florida statute was not even considered a statute of limitations, but was referred to as a statute of "non-claim".[12] Regardless, the Court rejected the notion

---

[12] The Court concluded that this interpretation was drawn from language in the statute which provided that a claim not filed within the specified period "'shall be void even though the personal representative has recognized such claim or demand by paying a portion thereof or interest thereon or otherwise.'" United States v. Summerlin, supra at 417.

that claims of the United States could be invalidated because they were not filed within the prescribed period of time.  The Court reasoned:

> If this were a statute merely determining the limits of the jurisdiction of a probate court and thus providing that the County Judge should have no jurisdiction to receive or pass upon claims not filed within the eight months, while leaving an opportunity to the United States otherwise to enforce its claim, the authority of the State to impose such a limitation upon its probate court might be conceded.  But if the statute, as sustained by the state court, undertakes to invalidate the claim of the United States, so that it cannot be enforced at all, because not filed within eight months, we think the statute in that sense transgressed the limits of state power.

Id.

We do not read Summerlin as requiring a distinction between a statute of limitations and a limitations period that is an element of a cause of action, and we hold that no such distinction is relevant in this case.  The Supreme Court in Summerlin did not recognize the Florida limitations period as a statute of limitations, and there is no language in that case limiting its holding to such statutes.  See FSLIC v. Landry, 701 F. Supp. 570, 573 (E.D. La. 1988).  The persuasive case law supports our holding. See United States v. Cody, 961 F. Supp. at 221.

Moreover, the public policy for exempting the Federal Government from the application of State statutes of limitations is not furthered by carving out exceptions where the State integrates the limitations period as an element of the cause of action which

could then be barred if untimely. See Guaranty Trust Co. v. United States, 304 U.S. 126, 136 (1938). The preservation and protection of public rights, revenues, and property from the negligence of public officers deteriorates when exceptions are made for time limitations that have the same purpose as statutes of limitations but in a different form. And the extinguishment provision of the UFTA was created precisely to circumvent the rule in United States v. Summerlin, supra, a provision that the Court of Appeals for the Ninth Circuit described as a "dressed-up statute of limitations". United States v. Bacon, 82 F.3d at 824 n.2; see Dillman v. Commissioner, 64 T.C. 797, 806 (1975) ("If the State statute attempts to abrogate or void the existing claim of the United States by use of a different timetable it will be attempting to reach beyond its powers. By whatever name such a statute might be called it would be in effect a statute of limitations not binding on the United States."). While a State may limit the jurisdiction of its own courts for private claimants, time limitations imposed on the United States' efforts to collect its taxes would "transgress the limits of state power." United States v. Summerlin, supra at 417.

Federal revenue law requires national application that is not displaced by variations in State law. Tax assessment and collection against a transferee in transferee liability cases is a difficult task; to complete such a task within arbitrary time

constraints of State law would be an even greater burden, particularly where, as in the case herein, the transferor is delinquent in filing its tax return.

Additionally, the Supreme Court has consistently held that, although State law is controlling as to the nature and extent of the property rights in applying a Federal revenue act, Federal law determines the consequences of those rights. United States v. National Bank of Commerce, 472 U.S. 713, 722-723 (1985); Aquilino v. United States, 363 U.S. 509, 513 (1960). "'[O]nce it has been determined that state law creates sufficient interests in the * * * [taxpayer] to satisfy the requirements of * * * [the statute], state law is inoperative,' and the tax consequences thenceforth are dictated by federal law." United States v. National Bank of Commerce, supra at 722 (quoting United States v. Bess, 357 U.S. 51, 56-57 (1958)).

In the situation before us we are concerned only with whether the Alhambra property was fraudulently conveyed to petitioner under California's UFTA; we are not concerned with whether the UFTA would permit the Federal Government to assess petitioner for transferee liability as a result of the fraudulent conveyance. The latter issue, including the time within which to assess, is resolved by Federal revenue law, not State property law. See sec. 6901.

Thus, we hold that respondent is not bound by the limitations period in California's UFTA in seeking to assert or assess

transferee liability against petitioner under section 6901.

Conclusion

In conclusion, we hold that section 6901(c) is the applicable limitations period to which respondent is bound in asserting transferee liability against petitioner for the unpaid taxes of Jaussaud Enterprises.  For purposes of petitioner's transferee liability under section 6901, California's limitations period does not control.  As a result, we hold that respondent timely issued the notice of transferee liability and has established petitioner's liability as a transferee.

To reflect the foregoing,

Decision will be entered

for respondent.

Reviewed by the Court.

COHEN, CHABOT, SWIFT, GERBER, PARR, WELLS, RUWE, COLVIN, CHIECHI, LARO, GALE, and MARVEL, JJ., agree with this majority opinion.

HALPERN, J., dissenting:

I. Introduction

The majority's conclusion that respondent has a right under the California Uniform Fraudulent Transfer Act to enforce a liability against petitioner fails to recognize and apply the distinction between statutes of limitations, which set maximum time periods during which certain actions can be brought or rights enforced, and temporal rights created by State statutes. Therefore, I dissent.

II. Section 6901

To use the courts to enforce a liability, the Government, like any other creditor, must establish a basis in law for that liability. Section 6901 does not provide any such basis.[1] See Commissioner v. Stern, 357 U.S. 39, 42 (1958) (interpreting section 311, I.R.C. 1939, the predecessor of section 6901). Section 6901(a) merely establishes the deficiency procedure as a mechanism for collecting certain existing, enumerated liabilities. One of the enumerated liabilities is the liability of a transferee of property of a taxpayer in the case of the income tax. Sec. 6901(a)(1)(A)(i). Section 6901(c) imposes a period of limitations for the assessment of the enumerated liabilities. Granting that

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

petitioner is the transferee of property of a taxpayer, the first question we must address is whether there is any basis in law for respondent's claim that petitioner has some liability to respondent on account thereof.

III. California Uniform Fraudulent Transfer Act

   A. Introduction

As the majority acknowledges, with the exception of proving that the taxpayer (Jaussaud) was liable for the tax, respondent has the burden of proving all of the elements necessary to establish petitioner's liability as the transferee of property of the taxpayer. Sec. 6902(a); Rule 142(d). The majority is also correct in stating that we must examine the law of California to determine petitioner's liability, if any. Majority op. p. 13. Respondent argues, and petitioner and the majority agree, that the applicable law of California is the California Uniform Fraudulent Transfer Act, Cal. Civ. Code sec. 3439 through 3439.12 (West 1997) (hereafter, CUFTA and section 3439.xx, respectively). The CUFTA provides remedies to creditors with respect to fraudulent transfers made by debtors. Section 3439.04 defines a fraudulent transfer, and section 3439.07 provides remedies to creditors. Those remedies delimit both the right of the creditor to demand something from a transferee and the offsetting duty (liability) of the transferee to comply (that duty hereafter being referred to as transferee liability). Section 3439.09 sets forth certain time limits within

which an action must be brought and provides for the extinguishment of the cause of action created by the CUFTA if those time limits are exceeded.  In the case of a fraudulent transfer within the meaning of section 3439.04(b), the cause of action is extinguished unless an action is brought or a levy is made pursuant to section 3439.07 within 4 years after the fraudulent transfer is made.

B.  Section 3439.09

Section 3439.09 is part of the CUFTA and, like the section 3439.07 remedies, it delimits the right (and offsetting transferee liability) created by the CUFTA.  It delimits that right, however, not in terms of specifying the available remedies, as does section 3439.07 but, rather, in terms of specifying the temporal dimension of the right.  Section 3439.09 is not a statute of limitations.  It does not operate by making the judicial mechanism unavailable to enforce the right.  Rather, it delimits the existence of the State-created right; thus, the question of enforcement is moot.  The distinction between a statute of limitations and a temporally delimited right is widely recognized.  See, e.g., Crandall v. Irwin, 39 N.E.2d 608, 610 (Ohio 1942), in which the Supreme Court of Ohio held:

> A wide distinction exists between pure statutes of limitation and special statutory limitations qualifying a given right.  In the latter instance time is made an essence of the right created, and the limitation is an inherent part of the statute or agreement out of which the right in question arises, so that there is no right of action whatever independent of the limitation.  A lapse of the statutory period operates, therefore, to

extinguish the right altogether.

C.  Respondent's Failure To Carry the Burden of Proof

The Government did not demonstrate that the transfer occurred within 4 years of the date of the notice of transferee liability against petitioner.  Majority op. p. 18.  Therefore, I conclude that the Government has not sustained its burden of proving that petitioner was liable as a transferee under California law.

IV.  The Summerlin Issue

A.  Quod Nullum Tempus Occurrit Reqi

The majority rests its holding on the ancient rule of quod nullum tempus occurrit regi--"that the sovereign is exempt from the consequences of its laches, and from the operation of statutes of limitations".  See Guaranty Trust Co. v. United States, 304 U.S. 126, 132 (1938).  The majority explains that the Supreme Court has already addressed the distinction between statutes of limitations and "non-claim" statutes in United States v. Summerlin, 310 U.S. 414 (1940).  The majority applies Summerlin here to dispose of the case on the theory that section 3439.09 amounts to a nonclaim statute, and that is the equivalent of a statute of limitations. The Supreme Court in Summerlin held that "if the statute * * * undertakes to invalidate the claim of the United States, so that it cannot be enforced at all, because not filed within * * * [the statutory period], we think the statute in that sense transgressed the limits of state power."  Id. at 417.

The distinction between "pure" statutes of limitations and "non-claim" statutes relates to how the statute achieves the limitation.[2] The Supreme Court held that such a distinction is irrelevant if the result is that the sovereign's claim is invalidated. Id. That is not, however, a relevant distinction here.

The issue here is not how the statute limits a right (i.e., by denying the means of enforcing the right or by extinguishing the right), but rather upon what right the limitation acts. The United States' claim in Summerlin arose when the Federal Housing Administrator became the assignee of a claim against a decedent's estate. The Government had an existing right that would have been invalidated by the provisions of a State statute had the State statute been held applicable. To the contrary, respondent's CUFTA claim against petitioner, as a transferee, is not created by Federal or common law. Respondent makes no claim except under the CUFTA, and, therefore, the issue is whether respondent has any rights as a creditor under the CUFTA. The issue here does not involve an extension or modification of the Summerlin doctrine,

---

[2] A "pure" statute of limitations merely limits or restricts the time within which a right, otherwise unlimited, may be enforced. Vaughn v. United States, 43 F. Supp. 306, 308 (E.D. Ark. 1942). A "non-claim" statute operates by extinguishing the underlying substantive right. See United States v. Summerlin, 310 U.S. 414 (1940). Both "pure" statutes of limitations and "non-claim" statutes are, however, statutes of limitations in that they are statutes that limit causes of action. Beach v. Mizner, 3 N.E.2d 417, 419 (Ohio 1936).

where the Supreme Court refused to apply a State statute of limitations to cut off the Government's existing cause of action. Rather, the Summerlin doctrine is inapposite to these circumstances.

B.    The Supreme Court

The Supreme Court has held that temporal limitations contained in State statutory rights are not statutes of limitations that are subject to the rule of quod nullum tempus occurrit regi.  See Custer v. McCutcheon, 283 U.S. 514 (1931).  In Custer, the Supreme Court reversed the decision of the Court of Appeals for the Ninth Circuit (Ninth Circuit) affirming a judgment of the District Court for Idaho in favor of a U.S. marshal.  The marshal had levied an execution against Custer upon a judgment entered in favor of the United States 9 years earlier.  The Idaho statute governing the execution process, which applied to proceedings in the District Court as if Congress had enacted the statute, provided that "[t]he party in whose favor judgment is given, may, at any time within five years after the entry thereof, have a writ of execution issued for its enforcement."  Id. at 515.  The Supreme Court, recognizing that absent specific provisions to the contrary, statutes of limitations do not bind the sovereign, held that the statute was not a statute of limitations.  Rather, the Court held that it was a statute granting a right of execution, and the time element is an

integral part of the statutory right conferred.  Id. at 516-517. Although the marshal argued that, on grounds of public policy, the sovereign ought not be subject to restrictions binding on private suitors, the Supreme Court saw no valid reason for making such an exception:

> The time limit for issuing executions is, strictly speaking, not a statute of limitations. On the contrary, the privilege of issuing an execution is merely to be exercised within a specified time, as are other procedural steps in the course of a litigation after it is instituted.  * * *

Id. at 519.

The Supreme Court has also recognized that the right of the Government to be free from statutes of limitations does not mean the Government can pursue a cause of action where none exists under State law or otherwise.  See United States v. California, 507 U.S. 746 (1993); Guaranty Trust Co. v. United States, supra.

C.  The Court of Appeals for the Ninth Circuit

The Ninth Circuit has similarly recognized that the Summerlin doctrine is inapplicable to State statutes that provide a time limitation as an element of a cause of action.  See United States v. California, 655 F.2d 914 (9th Cir. 1980).  In California, the Ninth Circuit held that the claim filing requirements of California Government Code section 911.2, which required that all claims for money or damages for which the State is liable be presented within 1 year of the date that the claim arose, was applicable to the Federal Government.  The Government was pursuing

a claim against the State of California pursuant to California Health and Safety Code section 13009 for the Government's expense of fighting a fire negligently set to a national forest. The majority conveniently dismisses such relevant precedent, relegating its mention to a footnote, and noting that the Ninth Circuit has never applied this exception in transferee liability cases. The majority does not, however,

provide any reasoning as to why there is a relevant distinction between substantive claims provided for by California State law that regard transferee liability versus liability in connection with the expenses incurred for fighting negligently set fires.

Another relevant Ninth Circuit case is United States v. Hartford Accident & Indem. Co., 460 F.2d 17, 18 (9th Cir. 1972). There, the Ninth Circuit held that the United States "was barred from recovery because of its failure to comply with the California Insurance Code" requiring suit to be brought within 1 year. Id. The Ninth Circuit recognized that United States v. Summerlin, 310 U.S. 414 (1940), provided "clear authority for the proposition that an action vested in the United States cannot be defeated by a state statute of limitations". United States v. Hartford Accident & Idem. Co., supra at 19. However, the Ninth Circuit determined that neither Summerlin nor its progeny "hold that considerations of federal supremacy can create a cause of action where none exists under state law or otherwise." Id. (citing

<u>United States v. Summerlin</u>, <u>supra</u> at 417).  Therefore, the Ninth Circuit distinguished pure statutes of limitations from State-created temporal rights.

D.  <u>Distinguishing a Temporal Right From a Temporal Limitation</u>

The cases cited from the Courts of Appeals by the majority in order to further its approach do not address the issue of whether a State can provide a limited temporal right, as opposed to temporally limiting the sovereign from exercising a right that is not otherwise so limited.  See <u>United States v. Moore</u>, 968 F.2d 1099 (11th Cir. 1992) (holding without citation to the Georgia statute in issue that the statute is a State statute of limitations); <u>United States v. Wurdemann</u>, 663 F.2d 50 (8th Cir. 1981) (holding without any analysis that State "statutes of limitation" do not apply to the sovereign); <u>United States v. Fernon</u>, 640 F.2d 609 (5th Cir. 1981) (interpreting Florida statute section 95.11(6) to be a statute of limitations, and not an element of a State-created right).  I agree with the criticisms made in <u>United States v. Vellalos</u>, 780 F. Supp. 705, 708 n.3 (D. Haw. 1992), appeal dismissed 990 F.2d 1265 (9th Cir. 1993), that these cases are "an overly mechanical application of the dicta in <u>Summerlin</u> without serious consideration of the significant implications such a rule has for state sovereignty."[3]

_____

[3]    There are numerous cases that deal with the question of
(continued...)

It is true that we are not bound to follow <u>United States v. Vellalos</u>, <u>supra</u>. The majority, however, attempts to distinguish it by noting that, in <u>Vellalos</u>, the Government was "unable to invoke section 6901 because it missed the limitations period prescribed by subsection (c). Therefore, it relied on State foreclosure proceedings as a means for collection." Majority op. p. 24. The majority explains that it is not clear whether the District Court in <u>Vellalos</u> would have reached its same conclusion had the Government proceeded timely under section 6901, which is the case here. I disagree. The District Court in <u>Vellalos</u> was explicit in holding that

> The Tenth Amendment to the United States Constitution provides:

---

[3](...continued)
whether, in substance, a temporal limitation should be treated as a temporally limited right. See, e.g., <u>Fairbanks-Morse & Co. v. Alaska Palladium Co.</u>, 32 F.2d 233, 234 (9th Cir. 1929) (quoting <u>Partee v. St. Louis & S.F.R. Co.</u>, 204 F. 970, 972 (8th Cir. 1913)):

> A statute which in itself creates a new liability, gives an action to enforce it unknown to the common law, and fixes the time within which that action may be commenced, is not a statute of limitations. It is a statute of creation, and the commencement of the action within the time it fixes is an indispensable condition of the liability and of the action which it permits. Such a statute is an offer of an action on condition that it be commenced within the specified time. If the offer is not accepted in the only way in which it can be accepted, by the commencement of the action within the specified time, the action and the right of action no longer exist, and the defendant is exempt from liability.

> The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.
>
> U.S. Const. amend. X.  The law of real property has traditionally been within the province of the states. The government has cited no federal statute that would restrict the states' rights to legislate in the area of fraudulent real estate transfers.
>
> Here, the government is seeking to take advantage of a right that is entirely within the domain of the state. This right was created by a state statute and specifically limited by the text of that statute.  This is not a straightforward question of debt collection under the common law as was addressed by the Supreme Court in Summerlin. * * *

United States v. Vellalos, supra at 707-708.

Further, the majority's review of United States v. Bacon, 82 F.3d 822 (9th Cir. 1996), ignores a significant holding.  The issue in Bacon was whether Washington State's Uniform Fraudulent Transfer Act (WSUFTA) may be applied retroactively.  The Ninth Circuit concluded that it is precisely because the WSUFTA contains an extinguishment provision, rather than a remedial or procedural limitation, that it does not apply retroactively absent an express provision to the contrary.

V.  Conclusion

For the foregoing reasons, I believe that the time period contained in CUFTA section 3439.09 is not a statute of limitations, but rather is an inherent element of the right created.  Although the effect of the provision is one of "non-claim" (i.e., it extinguishes the underlying substantive right), rather than a mere bar to enforcement, this difference is not

controlling. What is dispositive is that the right that the Government claims to possess against petitioner as a transferee is nonexistent but for the provisions of California State law, and California has decided to provide only a temporal right against transferees in these instances. Respondent and the majority may regret that California did not provide a different rule than it did, but it is not our province to legislate on behalf of the States. In limited circumstances, as illustrated by the Summerlin doctrine, we may ignore State statutes of limitations, but that is the extent of our authority. To hold otherwise is an encroachment on State sovereignty and raises problematic constitutional issues.

WHALEN, BEGHE, and THORNTON, JJ., agree with this dissenting opinion.